*892
 
 OPINION
 

 Per Curiam:
 

 This is an appeal from a district court order affirming the Employee-Management Relations Board’s (EMRB’s) decision regarding the discipline of police officers. The judgment of the district court is affirmed.
 

 FACTS
 

 On October 13, 1996, nine off-duty Reno police officers were involved in an altercation at Caesar’s Tahoe, located in Douglas County, Nevada, resulting in the arrest of two officers for disorderly conduct and battery. In a separate matter, another police officer was implicated in an off-duty episode and disciplined in July 1996. The Reno Police Protective Association (RPPA) represented the majority of the officers involved in both incidents. At the time of these events, all parties to this appeal, as well as the disciplined officers, were governed by a collective bargaining agreement (the contract) that expired in June 1997. The contract was negotiated by the RPPA and the City and contained all subjects of mandatory bargaining required by NRS 288.150.
 

 On June 17, 1997, the RPPA filed an unfair labor practice complaint against the City with the EMRB. The complaint alleged that the City engaged in a prohibited practice in violation of NRS 288.270
 
 [1]
 
 by adopting new criteria for disciplining police personnel for off-duty conduct without conducting mandatory negotiation as required by NRS 288.150. The RPPA argued that, prior to these incidents, the City had used three criteria known as the Robertson criteria, but when the City disciplined these officers, it added an additional criterion. The Robertson criteria, defining when police officers could be disciplined for off-duty misconduct, included:
 

 (a) identifying oneself as a police officer, thus placing himself/herself on duty, (b) the use of any tools of the police officer trade, such as handcuffs, gun, badge, identification, etc., and (c) did a third person know the individual as a police officer or identified the individual as a police officer.
 

 The City added the following criterion: “did the conduct impair the reputation or operations of the police department.” The EMRB deferred hearing the complaint because the RPPA was
 
 *893
 
 simultaneously arbitrating whether just cause existed to discipline the officers.
 

 The arbitrations pertinent to this appeal concerned the disciplinary actions taken against a police officer from the Caesar’s Tahoe incident and the officer from the July 1996 incident. The same arbitrator heard both disputes. The arbitrator, in both arbi-trations, was presented with three issues: (1) whether the City had jurisdiction to discipline the grievant for his off-duty conduct, and (2) if so, whether the grievant was disciplined for just cause under the contract, and (3) if not, what the remedy should be. The arbitrator determined that the Robertson criteria were not a clearly enunciated, or acted-upon, past practice. The arbitrator found that just cause existed to discipline the officers.
 

 After completion of the grievance-arbitration process, upon the RPPA’s request, the EMRB conducted a hearing on January 11, 2000, concerning the deferred complaint. At the outset, the City argued that the EMRB was estopped from hearing the matter because the arbitrations resolved the complaint. The EMRB decided to hear the matter because the complaint involved allegations of an unfair labor practice, a subject over which the EMRB has exclusive jurisdiction.
 

 During the hearing, the EMRB admitted a memorandum over the City’s claim of attorney-client privilege. Rick Gonzales, the City’s labor relations manager, authored the memorandum and sent it by e-mail to the chief deputy city attorney, two deputy city attorneys, and the assistant city manager. Ron Dreher, executive director of the RPPA, found the memorandum on his desk sometime after the arbitrations, but did not know who placed the document on his desk. The EMRB concluded that documents transmitted by e-mail are not covered by the attorney-client privilege.
 

 On February 29, 2000, based on the evidence before it, and without deferring to the arbitrator’s findings, the EMRB issued its decision. The EMRB found that the City’s use of the Robertson criteria was an established practice, which could only be changed through negotiation pursuant to NRS 288.150, and that the City engaged in a prohibited practice by unilaterally changing that criteria. The City petitioned the district court for judicial review. The district court denied the petition, finding that the EMRB’s decision was supported by substantial evidence. The City filed this appeal.
 

 DISCUSSION
 

 When reviewing an administrative decision, this court is limited to determining whether the decision is legally sound and is
 
 *894
 
 based upon substantial evidence.
 
 [2]
 
 This court conducts an independent de novo review of questions of law to determine whether there has been a clear error of judgment.
 
 [3]
 
 However, with respect to an agency’s decision concerning an issue of fact, this court will affirm the agency’s decision if it is supported by substantial evidence.
 
 [4]
 

 Collateral estoppel
 

 The City argues that the EMRB was precluded from determining whether the Robertson criteria were previously utilized in disciplining police officers’ off-duty conduct because the arbitrator, in both arbitrations, determined the criteria were not utilized. The doctrine of collateral estoppel precludes parties from re-litigating issues that were actually decided and necessary to a judgment in an earlier suit on a different claim between the same parties.
 
 [5]
 
 Collateral estoppel applies to arbitration.
 
 [6]
 
 However, when a collective bargaining agreement is at issue, the arbitrator’s award “ ‘must be based on the collective bargaining agreement,’ ” and the deference bestowed upon arbitration findings is not limitless.
 
 [7]
 

 Under the contract, the arbitrator had jurisdiction to determine if just cause existed to discipline the officers, but not to determine whether the City engaged in an unfair labor practice.
 
 [8]
 
 The parties only submitted their contract grievances to arbitration and did not
 
 *895
 
 agree to arbitrate their NRS 288.150 unfair labor practice claims.
 
 [9]
 
 Further, the contract itself provides, in Article 28, that the arbitrator’s decision is final and binding,
 
 unless the contract provides otherwise.
 
 The contract later states in Article 31(b):
 

 In the event the City intends to institute a change during the term of this Agreement of a subject which falls within the scope of mandatory bargaining as outlined in Subsection 2 of NRS 288.150, the City recognizes its duty to bargain with the Association over said change.
 
 Disputes arising under this Article shall not be grievable under Article 28 of this Agreement, but shall be submitted to the Nevada Local Government Employee-Management Relations Board of resolution.
 

 (Emphasis added.) The contract also states that the arbitrator’s decision must be consistent with the terms of the contract. Accordingly, disputes concerning a change in disciplinary procedure, such as modification of the Robertson criteria, would be submitted to the EMRB,
 
 [10]
 
 and any factual finding or conclusion in an arbitration award concerning such modification would not be final or binding.
 

 This court has recognized that the EMRB has exclusive jurisdiction over unfair labor practice issues.
 
 [11]
 
 An unfair labor practice includes the prohibited practice of unilaterally changing a subject of mandatory bargaining.
 
 [12]
 
 A function of the EMRB is to determine whether a matter falls within the scope of mandatory bargaining.
 
 [13]
 
 The EMRB has the duty to administer NRS Chapter 288, and thus, is “impliedly clothed with [the] power to construe it as a necessary precedent to administrative action.”
 
 [14]
 
 We conclude, therefore, that the EMRB is not estopped from determining issues previously decided by an arbitrator when the EMRB has exclusive jurisdiction over the issue. Thus, the EMRB did not err by hearing the RPPA’s unfair labor practice complaint.
 

 
 *896
 

 Deferral
 

 The City argues that because the EMRB is patterned after the National Labor Relations Board (NLRB), the EMRB is required to apply the deferral policy followed by the NLRB.
 
 [15]
 
 This court has held that “it is proper to look toward the NLRB for guidance on issues involving the EMRB.”
 
 [16]
 
 The NLRB defers to a prior arbitration if:
 

 (1) the arbitration proceedings were fair and regular; (2) the parties agreed to be bound; (3) the decision was not “clearly repugnant to the purposes and policies of the [National Labor Relations Act (NLRA)];” (4) the contractual issue was factually parallel to the unfair labor practice issue; and (5) the arbitrator was presented generally with the facts relevant to resolving the [unfair labor practice].
 
 [17]
 

 The party desiring the NLRB to reject an arbitration award has the burden of demonstrating that these principles are not met.
 
 [18]
 
 We adopt the NLRB deferral policy and conclude that the EMRB must apply these principles in determining whether to defer to an arbitration. However, under these principles, the EMRB would not be required to defer to the arbitrations in this case.
 

 First, the parties did not agree to be bound by the arbitrator’s decision regarding changes to mandatory subjects of bargaining.
 
 [19]
 
 In fact, the contract specifically stated that disputes concerning changes to mandatory bargaining were to be submitted to the EMRB. Further, under the contract, an arbitrator’s decision as to negotiable subjects is not final, or binding. When the NLRB has deferred to arbitration awards, the parties had specifically agreed to be bound, under their collective bargaining agreement, to the arbitrator’s decision on that particular matter.
 
 [20]
 

 
 *897
 
 Secondly, the arbitrator’s decisions were repugnant to the Employee-Management Relations Act (EMRA).
 
 [21]
 
 Under the NLRB deferral standard, the NLRB need not defer if the “arbitrator’s decision is not susceptible to an interpretation consistent with the [NLRA].”
 
 [22]
 
 Here, the EMRB has exclusive jurisdiction over alleged prohibited practices concerning mandatory bargaining issues.
 
 [23]
 
 The arbitrator found that the City may unilaterally adopt rules and enforce them with disciplinary action, as long as the rules are reasonable and not in conflict with the law. Yet, under the EMRA, disciplinary procedure is a mandatory subject of negotiation.
 
 [24]
 
 We conclude, therefore, that the EMRB was not required to defer to the arbitrations in this particular matter.
 

 E-mail and the attorney-client privilege
 

 The EMRB admitted the Gonzalez memorandum, a document normally protected by the attorney-client privilege, because the memorandum was transmitted by e-mail.
 
 [25]
 
 Under the attorney-client privilege, a client may “refuse to disclose, and . . . prevent any other person from disclosing, confidential communications: [b]etween himself or his representative and his lawyer or his lawyer’s representative.’ ’
 
 [26]
 
 The EMRB is required by Nevada law to give effect to the attorney-client privilege.
 
 [27]
 
 The EMRB concluded that documents sent by e-mail cannot be considered privileged.
 

 [Headnote 14]
 

 Contrary to the EMRB’s decision, documents transmitted by e-mail are protected by the attorney-client privilege. Courts have generally looked to the content and recipients of the e-mail to determine if the e-mail is protected.
 
 [28]
 
 California has enacted a
 
 *898
 
 statute providing that “[a] communication between a client and his or her lawyer is not deemed lacking in confidentiality solely because the communication is transmitted by . . . electronic means between the client and his or her lawyer.”
 
 [29]
 
 Similarly, the American Bar Association (ABA) has concluded that an attorney does not violate the confidentiality provisions of the Model Rules of Professional Conduct by using e-mail as long as the client has agreed to that mode of communication.
 
 [30]
 
 The ABA has also found that e-mails “pose no greater risk of interception or disclosure than other modes of communication commonly relied upon as having a reasonable expectation of privacy” and “[t]he level of legal protection accorded e-mail transmissions . . . supports the reasonableness of an expectation of privacy.’ ’
 
 [31]
 
 We conclude that a document transmitted by e-mail is protected by the attorney-client privilege as long as the requirements of the privilege are met.
 

 The EMRB contends that the Gonzales memorandum was not confidential based on City Management Policies and Procedures (policy) that cover the use of City computers. The policy provides that employees have no expectation of privacy in using City equipment and that “ [electronic data transmissions using City hardware or software may be classified as public documents.” However, the policy is meant to deprive expectations of privacy only as to personal use and warn employees that the City has the right to review personal documents on City hardware. Such policies are common in workplaces. If a document transmitted by e-mail could not be privileged based on such a policy, very few e-mails would be protected. Further, the City’s policy specifically encourages the use of e-mail for City business purposes to increase the efficiency of communication between the departments. It seems unlikely that the City would encourage such use for business if the City did not view these transmissions as confidential. We conclude that the Gonzales memorandum was confidential, and therefore privileged, despite the City’s policy. Although the EMRB erred by admitting the Gonzales memorandum, the error is harmless because substantial evidence supported the EMRB’s decision even without the memorandum.
 

 
 *899
 

 Substantial evidence
 

 Substantial evidence is evidence that a reasonable person would deem adequate to support a decision.
 
 [32]
 
 This court is limited to reviewing the agency record as it was presented before the administrative body in order to determine whether substantial evidence existed.
 
 [33]
 
 If the agency’s decision lacks substantial evidentiary support, the decision is unsustainable as being arbitrary or capricious.
 
 [34]
 

 Ron Dreher, executive director of the RPPA, testified that the Robertson criteria were the established procedure for imposing discipline on officers for off-duty conduct during Police Chief Richard Kirkland’s and Police Chief Robert Bradshaw’s tenures. Further, the RPPA submitted into evidence a letter from Deputy Chief of Police James Weston, the chief in charge of the officers involved, to Dreher, in which Weston stated he looked toward four factors for imposing discipline for off-duty conduct. The Robertson criteria are only composed of three of those factors. Weston included the fourth factor of whether “the conduct impair[ed] the reputation or operations of the police department.’ ’ The letter was dated after the Caesar’s Tahoe incident.
 

 Dreher testified that Weston utilized the Robertson criteria until the Caesar’s Tahoe incident. During Weston’s tenure, two other officers were involved in off-duty conduct affecting the reputation of the police department. One of those officers was arrested for a DUI, her picture was featured on the front page of the newspaper, and she was identified as an officer. Another officer committed domestic violence and was also identified in the newspaper as a police officer. Neither officer was disciplined. Based on this evidence in the record, we conclude that substantial evidence supports the EMRB’s decision that the Robertson criteria were an established past practice, and that the fourth factor was added without negotiation.
 

 Mandatory subjects of negotiation
 

 The City contends that its discipline of the police officers for off-duty misconduct was not a unilateral change of disciplinary
 
 *900
 
 procedure in violation of NRS 288.150. The EMRB found otherwise. The construction of a statute is a question of law, and therefore, independent review is appropriate.
 
 [35]
 
 However, this court will not readily disturb an administrative interpretation of statutory language.
 
 [36]
 
 This court has held that “ ‘[a]n agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action [and] great deference should be given to the agency’s interpretation when it is within the language of the statute.’ ”
 
 [37]
 
 The EMRB has the authority to interpret and administer NRS Chapter 288.
 
 [38]
 

 NRS 288.150(1) states that government employers must negotiate with employee organizations concerning mandatory subjects of bargaining. NRS 288.150(2) provides a list of these subjects, which includes “[discharge and disciplinary procedures.” The EMRB determined, based on substantial evidence, that the Robertson criteria established what actions of an off-duty officer were punishable. The criteria are not included in the contract, nor do they mention disciplinary procedure for off-duty conduct. However, the EMRB has previously held that “an employer may create, by practice over a substantial period of time, a term or condition of employment which it is obligated to continue, subject to negotiation. This notwithstanding the clear and unambiguous terms of the collective bargaining agreement.”
 
 [39]
 
 The EMRB determined that the Robertson criteria were a past practice and hence became part of the contract.
 

 Criteria used in determining whether to impose discipline on an individual for off-duty conduct clearly fit within the definition of “disciplinary procedure.” “Discipline” means “to punish”
 
 [40]
 
 while “procedure” is “an established way” of doing things.
 
 [41]
 
 The Robertson criteria were the established criteria for determining punishable conduct of off-duty officers. We conclude, therefore, the EMRB had substantial evidence on which to base the determination that when the City added an additional criterion to the Robertson criteria without negotiation, it failed to comply with NRS 288.150.
 

 
 *901
 

 CONCLUSION
 

 For the reasons set forth above, we affirm the judgment of the district court.
 

 [1]
 

 NRS 288.270(l)(e) provides that a local government employer is prohibited from “[r]efus[ing] to bargain collectively in good faith with the exclusive representative as required in NRS 288.150.”
 

 [2]
 

 SHS v. Romero,
 
 110 Nev. 739, 742, 877 P.2d 541, 542 (1994).
 

 [3]
 

 Tighe v. Las Vegas Metro. Police Dep’t,
 
 110 Nev 632, 634-35, 877 P.2d 1032, 1034 (1994).
 

 [4]
 

 Id.
 
 at 634, 877 P.2d at 1034.
 

 [5]
 

 University of Nevada v. Tarkanian,
 
 110 Nev 581, 598-99, 879 P2d 1180, 1191 (1994),
 
 modified on other grounds by Executive Mgmt.
 
 v.
 
 Ticor Title Ins. Co.,
 
 114 Nev. 823, 963 P.2d 465 (1998).
 

 [6]
 

 Int’l Assoc. Firefighters v. City of Las Vegas,
 
 107 Nev 906, 911, 823 P.2d 877, 880 (1991).
 

 [7]
 

 Id.
 
 at 910, 823 P.2d at 879 (quoting
 
 IBEW Local 396 v. Central Tel. Co.,
 
 94 Nev 491, 493, 581 P.2d 865, 867 (1978)).
 

 [8]
 

 See Int’l Ass’n Firefighters
 
 v.
 
 Las Vegas,
 
 112 Nev 1319, 1323, 929 P.2d 954, 956 (1996) (finding that the extent of arbitrators’ jurisdiction over NRS Chapter 288 collective bargaining agreements depends upon the construction of the agreement). The contract at issue provides that discipline must be for just cause and is subject to review under the Article 28 grievance-arbitration procedures. Article 28(a) states that: “The purpose of the . . . grievance-arbitration procedure shall be to settle . . . disputes concerning the interpretation, application, and enforcement of this Agreement raised by an employee or the Association.”
 

 [9]
 

 Cf. Rex, Inc. v. Manufactured Hous. Comm. of NM,
 
 892 P.2d 947 (N.M. 1995) (holding that if a party
 
 specifically agrees
 
 to arbitrate statutory claims, the private arbitration could bind an administrative body).
 

 [10]
 

 See
 
 NRS 288.150.
 

 [11]
 

 Rosequist v. Int’l Ass’n of Firefighters,
 
 118 Nev. 444, 449, 49 P.3d 651, 654 (2002); NRS 288.110(2) (stating that the EMRB hears and determines complaints arising out of NRS Chapter 288).
 

 [12]
 

 NRS 288.280 (providing that “[a]ny controversy concerning prohibited practices may be submitted to the board”).
 

 [13]
 

 Clark Co. Sch. Dist. v. Local Gov't,
 
 90 Nev. 442, 446, 530 P.2d 114, 117 (1974).
 

 [14]
 

 Id.
 

 [15]
 

 See Rosequist,
 
 118 Nev. at 449, 49 P.3d at 654.
 

 [16]
 

 Id.
 

 [17]
 

 Garcia
 
 v.
 
 N.L.R.B.,
 
 785 F.2d 807, 809 (9th Cir. 1986) (quoting
 
 Spielberg Manufacturing Co.,
 
 112 N.L.R.B. 1080, 1082 (1955));
 
 see also Olin Corp.,
 
 268 N.L.R.B. 573, 574 (1984).
 

 [18]
 

 Olin,
 
 268 N.L.R.B. at 574.
 

 [19]
 

 See Garcia,
 
 785 F.2d at 809 (holding that for the deferral policy to apply, the parties must have agreed to be bound by the arbitration).
 

 [20]
 

 See Utility Workers Union v. N.L.R.B.,
 
 39 F.3d 1210, 1213 (D.C. Cir. 1994) (finding that “parties must have
 
 contractually agreed
 
 to be bound by the [arbitration]” (emphasis added));
 
 Spielberg,
 
 112 N.L.R.B. at 1087 (deferring to arbitration award because parties agreed that issue of reinstatement would be submitted to arbitration).
 

 [21]
 

 See Garcia,
 
 785 F.2d at 809 (holding that the deferral policy does not apply if the arbitrator’s finding is repugnant to the NLRA).
 

 [22]
 

 Olin,
 
 268 N.L.R.B. at 574.
 

 [23]
 

 See Rosequist,
 
 118 Nev. at 449, 49 P.3d at 654; NRS 288.110(2).
 

 [24]
 

 NRS 288.150(2)(i).
 

 [25]
 

 The RPPA stipulated that all individuals that received the Gonzales memorandum were covered by the attorney-client privilege.
 

 [26]
 

 NRS 49.095(1).
 

 [27]
 

 NRS 233B. 123(1) (stating that “[a]gencies shall give effect to the rules of privilege recognized by law”).
 

 [28]
 

 See Mold-Masters Ltd. v. Husky Injection Molding Systems,
 
 No. 01 C 1576, 2001 WL 1558303 (N.D. Ill. Dec. 6, 2001) (considering whether e-mails contained communications concerning legal advice);
 
 Nat'l Employment Service Corp.
 
 v.
 
 Liberty Mutual Insurance Co.,
 
 No. 93-2528-G, 1994 WL 878920, at *2-3 (Mass. Super. Ct. Dec. 12, 1994) (holding e-mails sent to or from an in-house counsel protected because contained legal advice and plaintiff failed to prove e-mails were disclosed to third parties);
 
 U.S. v.
 
 
 *898
 

 Keystone Sanitation Co., Inc.,
 
 903 F. Supp. 803 (M.D. Pa. 1995);
 
 Johnson
 
 v.
 
 Sea-Land Service,
 
 No. 99 CIV9161WHPTHK, 2001 WL 897185 (S.D.N.Y. Aug. 9, 2001);
 
 Yurick ex rel. Yurick
 
 v.
 
 Liberty Mut. Ins. Co.,
 
 201 F.R.D. 465 (D. Ariz. 2001).
 

 [29]
 

 Cal. Evidence Code § 952 (West 1995).
 

 [30]
 

 ABA Comm. On Ethics and Prof’l Responsibility, Formal Op. 413 (1999) (discussing the confidentiality of unencrypted e-mail).
 

 [31]
 

 Id. at 1.
 

 [32]
 

 Schepcoff v. SHS,
 
 109 Nev. 322, 325, 849 P.2d 271, 273 (1993).
 

 [33]
 

 Employment Security Dep’t
 
 v.
 
 Cline,
 
 109 Nev. 74, 76, 847 P.2d 736, 738 (1993).
 

 [34]
 

 NRS 233B. 135(3);
 
 State, Dep’t Mtr. Veh.
 
 v.
 
 Root,
 
 113 Nev. 942, 947, 944 P.2d 784, 787 (1997).
 

 [35]
 

 Maxwell v. SHS,
 
 109 Nev. 327, 329, 849 P.2d 267, 269 (1993).
 

 [36]
 

 Westergard
 
 v.
 
 Barnes,
 
 105 Nev. 830, 834, 784 P.2d 944, 947 (1989).
 

 [37]
 

 State v. State Engineer,
 
 104 Nev. 709, 713, 766 P.2d 263, 266 (1988) (quoting
 
 Clark Co. Sch. Dist.,
 
 90 Nev. at 446, 530 P.2d at 117).
 

 [38]
 

 NRS 288.110.
 

 [39]
 

 Ormsby County Education Assoc. v. Carson City School Dist.,
 
 No. Al-045527, Item No. 311, at 8 (EMRB Apr. 1, 1993) (citation omitted).
 

 [40]
 

 Webster’s Third New International Dictionary
 
 645 (1968).
 

 [41]
 

 Id.
 
 at 1807.