129 Nev., Advance Opinion 36

IN THE SUPREME COURT OF THE STATE OF NEVADA

LAURIE BISCH,
Appellant,
vs.
LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, A LOCAL
GOVERNMENT EMPLOYER; AND LAS
VEGAS POLICE PROTECTIVE
ASSOCIATION, INC.,
Respondents.

No. 58810



FILED

MAY 3 0 2013

Appeal from a district court order denying a petition for judicial review and denying declaratory and injunctive relief in an employment matter. Eighth Judicial District Court, Clark County; Jerome T. Tao, Judge.

*Affirmed.*

Law Office of Daniel Marks and Adam Levine and Daniel Marks, Las Vegas,
for Appellant.

Marquis Aurbach Coffing and Nicholas D. Crosby and Micah S. Echols, Las Vegas,
for Respondent Las Vegas Metropolitan Police Department.

Kathryn Werner Collins, Las Vegas,
for Respondent Las Vegas Police Protective Association, Inc.

BEFORE THE COURT EN BANC.[1]

[1]The Honorable Kristina Pickering, Chief Justice, voluntarily recused herself from participation in the decision of this matter.

## OPINION

By the Court, PARRAGUIRRE, J.:

The Las Vegas Metropolitan Police Department (LVMPD) initiated an internal investigation of appellant Laurie Bisch regarding allegations of insurance fraud after Bisch's dog bit her daughter's 17-year-old friend, and Bisch represented to medical staff that the girl was her own daughter but did not use her employer-provided health insurance. Bisch was not provided a police protective association (PPA) representative during an internal investigation meeting because she had retained a private attorney. At issue here is whether Bisch was entitled to have PPA representation present during an internal investigation meeting. We hold that she was not. NRS 289.080 did not impose a duty on the PPA to provide representation to Bisch.

Although the charges of insurance fraud were ultimately dropped, the LVMPD issued Bisch a formal written reprimand for a violation of "[c]onduct unbecoming an employee" under LVMPD Civil Service Rule 510.2(G)(1). Also at issue is whether Bisch's discipline was based on overly broad criteria or was politically motivated. We conclude that her discipline was proper because the discipline bore directly on her fitness to perform her profession. Further, despite the fact that she established a prima facie case of political motivation, substantial evidence was presented to rebut the presumption of discrimination. We therefore affirm the district court's decision.

## FACTS

Bisch is a seasoned veteran of the LVMPD. In 2006, she ran unsuccessfully for Clark County Sheriff, and it was well known that she planned to run again in 2010.

In 2008, while Bisch was off duty, her dog bit her daughter's 17-year-old friend. Bisch took the girl to an urgent care facility for treatment. Unable to contact the girl's mother and concerned that the urgent care would not provide treatment without a legal guardian present, Bisch represented to the urgent care staff that the girl was actually her own daughter, using both her daughter's name and birthday. Bisch paid for the treatment with her own funds and did not use her employer-provided health insurance.

Upon learning of the dog bite and ensuing medical treatment, the girl's mother filed a complaint with the LVMPD, alleging that Bisch had committed insurance fraud by misrepresenting the girl's identity to the hospital.

This complaint generated an Internal Affairs (IA) investigation into Bisch's conduct. Although the IA investigator confirmed that Bisch had not used her insurance to pay for the treatment, IA nonetheless scheduled an interview with Bisch. In preparation for this interview, Bisch informed her PPA representative that she would bring her private attorney to the interview, but requested that a PPA representative also be present. Bisch's PPA representative responded that, per the PPA bylaws, the PPA provided representation only when the member did not procure his or her own attorney. The interview proceeded without PPA representation.

Approximately one week later, the IA investigator determined that Bisch had not committed insurance fraud but still inquired to both the LVMPD and the district attorney's office as to whether Bisch had violated any laws. After hearing a cursory description of Bisch's conduct over the phone, a deputy district attorney informed the IA investigator

 

that Bisch *may* have committed identity theft, a felony under NRS 205.463.

The IA investigator concluded his investigation by generating a report that recommended sustaining the initial complaint lodged against Bisch on the ground that she had committed identity theft, which, as a felony, was a terminable offense. Pursuant to LVMPD policy, the IA investigator's report was sent to Sergeant Ken Romane for approval. Having received mixed signals from his own supervisor regarding the nature of the complaint against Bisch, Romane spoke with Bisch and the IA investigator directly, and decided that he could not in good faith issue any formal discipline to Bisch. Romane then contacted LVMPD's labor relations office and stated that the report needed to be "pulled back" and reconsidered, as he felt the identity theft charge was unsubstantiated.

A few months later, LVMPD informed Romane that the complaint against Bisch would be sustained, but because Bisch could not be found to have committed identity theft under NRS 205.463, the complaint would be sustained for the lesser violation of LVMPD Civil Service Rule 510.2(G)(1), which forbids "[c]onduct unbecoming an employee."

Although Romane again sought permission to simply give Bisch a verbal warning, his supervisor instructed him to give Bisch a formal written reprimand—the lowest form of official discipline. Eighteen months later, the written reprimand was removed from Bisch's employee file as required by LVMPD policy.

Following the written reprimand in 2009, Bisch filed a complaint with the Employee Management Relations Board (EMRB) against both the PPA and LVMPD. Bisch alleged that the PPA had

breached its duty of fair representation when it refused to represent her at her IA interview. According to Bisch, the PPA's refusal was discriminatory because it was politically motivated by its endorsement of a different candidate for sheriff in the 2006 election. Bisch also contended that NRS 289.080, which governs peace officers' rights during an investigation, granted her the right to have two representatives of her choosing at her IA interview and that the PPA's violation of this statute constituted a separate breach of the duty of fair representation.

With regard to the LVMPD, Bisch contended that it had implemented overly broad disciplinary criteria by disciplining her for off-duty conduct that had no actual effect on her ability to perform her job. Additionally, Bisch argued that her written reprimand was a politically motivated attempt to thwart her 2010 campaign for sheriff. Following a two-day hearing, the EMRB denied Bisch's claims in their entirety. The district court likewise denied Bisch's subsequent petition for judicial review, and this appeal followed.[2]

## DISCUSSION

In this appeal, we first address whether the current matter is moot following the removal of the written reprimand from Bisch's employee file. Concluding that it is not, we then address whether the EMRB properly rejected Bisch's duty-of-fair-representation claim and determine that NRS 289.080 does not impose a duty on Bisch's PPA to

---

[2]The district court also denied declarative and injunctive relief, but since there are no arguments regarding these issues on appeal, we do not address them here. *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. ___, ___ n.3, 252 P.3d 668, 672 n.3 (2011) ("Issues not raised in an appellant's opening brief are deemed waived.").

 

provide a representative for an investigatory interview by her employer. We then address whether the EMRB properly rejected Bisch's claim that the discipline was politically motivated, concluding that the EMRB applied the correct legal standard and relied on substantial evidence in upholding LVMPD's written reprimand.

*Standard of review*

This court, like the district court, gives considerable deference to rulings by the Employee Management Relations Board. *City of N. Las Vegas v. State, EMRB*, 127 Nev. ___, ___, 261 P.3d 1071, 1076 (2011); *see also* NRS 233B.135(3). This court reviews pure questions of law de novo but will affirm the EMRB's decision concerning a question of fact if it is supported by substantial evidence. *City of Reno v. Reno Police Protective Ass'n*, 118 Nev. 889, 894, 59 P.3d 1212, 1216 (2002). Substantial evidence is evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* at 899, 59 P.3d 1219. In determining whether substantial evidence exists, this court is limited to the record as it was presented before the EMRB. *Id.* If the decision lacks substantial evidentiary support, the decision is unsustainable as being arbitrary or capricious. *Id.*

*Bisch's appeal is not moot*

Prior to oral argument, LVMPD notified this court that the issue of removing the written reprimand is potentially moot, as LVMPD policy requires the removal of written reprimands from employee files 18 months after the employee signs the adjudication. LVMPD represented to this court that the 18-month period had passed and that the reprimand is no longer included in Bisch's employee file.

In Nevada, "[a] moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights." *NCAA v. Univ. of Nev.*, 97 Nev. 56, 58, 624 P.2d 10, 11 (1981). "Cases presenting real controversies at the time of their institution may become moot by the happening of subsequent events." *Id.* Even if this issue is now moot, we may still consider this case as a matter of widespread importance capable of repetition, yet evading review. *Personhood Nev. v. Bristol*, 126 Nev. ___, ___, 245 P.3d 572, 574 (2010). If so, then Bisch must demonstrate that (1) the duration of the challenged action is relatively short, (2) there is a likelihood that a similar issue will arise in the future, and (3) the matter is important. *Id.*

Despite the apparent removal of the discipline from Bisch's employee file, the alleged political motivation of the reprimand and the potential effect it could have on Bisch's political ambitions demonstrate that an actual controversy still exists. We therefore decline LVMPD's request to dismiss this appeal as moot.

*The EMRB properly rejected Bisch's duty-of-fair-representation claim*

In challenging the EMRB's rejection of her duty-of-fair-representation claim, Bisch contends that the PPA breached its duty by declining to have a PPA representative appear on her behalf at the IA interview even though NRS 289.080(1) grants her the right to have two representatives present. We reject this argument.

Bisch contends that the PPA breached its duty of fair representation to her by refusing to provide her with a PPA representative of her choosing at her IA interview. As detailed above, in discussing her upcoming IA interview with her PPA representative, Bisch indicated that she would be retaining private counsel for the interview but requested

that a PPA representative also appear on her behalf. At that time, Bisch was informed that, per PPA policy, if she was represented at the interview by private counsel, a PPA representative would not appear on her behalf.

Bisch maintains that the PPA's policy of not providing a representative to appear on behalf of an officer who has retained counsel and the application of this policy to her in this instance constitute a violation of the representation rights provided to peace officers under NRS 289.080(1). Bisch contends that NRS 289.080 unambiguously granted her a right to have *two* representatives of her choosing at her interview, and that her union's refusal to provide her with a second representative constituted a violation of this statute. Therefore, according to Bisch, the union's violation of the statute constituted a breach of its duty of fair representation.

NRS 289.080(1) provides:

> [A] peace officer who is the subject of an investigation . . . *may upon request have two representatives of the peace officer's choosing present* with the peace officer during any phase of an interrogation or hearing relating to the investigation, including, without limitation, a lawyer, a representative of a labor union or another peace officer.

(Emphasis added.) The PPA argues that the district court correctly concluded that the plain language of the statute does not create any affirmative duty on the union to provide a second representative at the interview, rather, it only provides a right of two representatives. The district court then looked at the broader statutory scheme to determine that the statute only provides a right of representation in regards to the employer, and does not impose any duties on the police union.

The interpretation of NRS 289.080 regarding any duties it imposes on PPAs is an issue of first impression in Nevada. This court

reviews questions of law, such as statutory interpretation, de novo. *Nyberg v. Nev. Indus. Comm'n*, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984). In doing so, we apply the plain meaning of the statute and give the words their ordinary meaning where the statute is plain and unambiguous. *Cromer v. Wilson*, 126 Nev. ___, ___, 225 P.3d 788, 790 (2010). Where the statute is ambiguous, we look beyond the plain language of the statute to determine its meaning. *Id.* In order to give effect to the Legislature's intent, we have a duty to consider the statute within the broader statutory scheme "'harmoniously with one another in accordance with the general purpose of those statutes.'" *S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) (quoting *Washington v. State*, 117 Nev. 735, 739, 30 P.3d 1134, 1136 (2001)).

Here, the statute does not expressly impose any affirmative duties, but only provides the employee the right to have two representatives of his or her choosing present at an interrogation, which would necessarily prevent the employer from barring the employee from having two representatives. Because the statute does not impose any duty for any entity to provide a representative, we are unable, therefore, to conclude from the plain language of the statute that NRS 289.080 supports Bisch's arguments.[3]

---

[3]Bisch also cites *N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251 (1975), for the proposition that a union member has a "right" to have a union representative present during an employer interrogation. The *Weingarten* Court held only that an employer may not force an employee to participate in an interrogation without a union representative. 420 U.S. at 262. It made no mention of the union's duties to the employee/member in such a situation.

Though we reject Bisch's argument that the statute imposes a duty on the PPA on its face, looking to the broader statutory scheme provides further illumination. NRS 289.080 is part of NRS Chapter 289's "Peace Officer Bill of Rights." *See Ruiz v. City of N. Las Vegas*, 127 Nev. ___, ___, 255 P.3d 216, 218 (2011) (indicating that the Peace Officer Bill of Rights is codified at NRS 289.010-.120). In Nevada and other states with such statutes, law enforcement bills of rights afford peace officers certain procedural protections when dealing with their *employer* in an adversarial setting. For example, NRS 289.120 provides: "Any peace officer aggrieved by an action of the employer of the peace officer in violation of this chapter may, after exhausting any applicable . . . administrative remedies, apply to the district court for judicial relief." NRS 289.120 provides judicial review for violations of this chapter by *employers* and indicates that the duties of NRS Chapter 289 are only imposed on employers, not PPAs.

We conclude, therefore, that the protection provided by NRS 289.080 is only in regard to Bisch's employer. Because nothing in NRS 289.080 or the rest of the Peace Officer Bill of Rights governs a PPA's responsibility toward its members, the EMRB correctly concluded that NRS 289.080 did not impose an additional duty of fair representation on the PPA.

*The EMRB properly upheld LVMPD's written reprimand of Bisch*

After the IA investigation concluded, Bisch was issued a written reprimand for violating Civil Service Rule 510.2(G)(1) by committing misconduct outside of her official duties. She challenged this discipline before the EMRB in an effort to force the LVMPD to remove the written reprimand from her employee file. Bisch contended that removal was required because improper criteria had been used in issuing the

discipline under Civil Service Rule 510.2(G)(1) and because she had been improperly punished for political reasons. The EMRB rejected these arguments, and the district court similarly declined to grant judicial review. On appeal, Bisch reiterates these arguments in support of her position that the written reprimand should have been removed. For the following reasons, we conclude that the EMRB properly upheld the LVMPD's written reprimand.

*The conduct for which Bisch was disciplined was sufficiently related to the performance of her duties as a peace officer*

Bisch argues that the LVMPD disciplined her for off-duty conduct, which she argues is an unconstitutional application of arbitrary discipline criteria. The regulation under which Bisch was disciplined, Civil Service Rule 510.2(G)(1), provides a basis for discipline as follows:

> The term "misconduct" shall mean not only improper action by an employee in his official capacity, but also any conduct by an employee unconnected with his official duties, [(1)] tending to bring the Department into public discredit which [(2)] tends to affect the employee's ability to perform his duties efficiently . . . .

The LVMPD counters that the application of the disciplinary criteria was appropriate and supported by substantial evidence. We find Bisch's arguments to be without merit.

Bisch cites *Stevens v. Hocker* for the proposition that discipline criteria that punishes an employee for off-duty conduct is arbitrary and capricious unless the improper conduct bears directly on the fitness of the employee to perform his or her profession. 91 Nev. 392, 394, 536 P.2d 88, 89-90 (1975). In *Stevens*, an off-duty prison guard was arrested for disorderly conduct after drunkenly yelling at his wife. *Id.* at 393, 536 P.2d at 89. Despite having never been convicted of a crime, the guard was

discharged from his job based on a rule that forbade "conduct detrimental to the good of the institution." *Id.* at 393-94, 536 P.2d at 89-90 (citation omitted). This court reversed the discipline, concluding that the language of the rule was "so illusive as to embrace an almost unlimited area of conduct." *Id.* at 394-95, 536 P.2d at 90. While the court recognized that it had previously upheld the imposition of discipline for violation of equally amorphous rules prohibiting "unprofessional conduct," the *Stevens* court reasoned that in those cases, "the conduct in issue bore directly upon fitness to perform the profession involved." *Id.* (citing *Moore v. Board of Trustees*, 88 Nev. 207, 495 P.2d 605 (1972); *Meinhold v. Clark Cnty. Sch. Dist.*, 89 Nev. 56, 506 P.2d 420 (1973)). Applying this rule, the *Stevens* court concluded that "[appellant's] off-duty transgression . . . had [no] bearing at all upon his performance as an employee of the Nevada State Prison," and therefore it reversed the prison guard's termination. *Id.* at 395, 536 P.2d at 90.

Bisch is incorrect that *Stevens* renders the discipline for her off-duty conduct improper. Like in *Stevens*, the language of Civil Service Rule 510.2 is relatively broad in terms of the types of conduct that may be disciplined. However, like the court in *Stevens*, we do not consider such language unconstitutionally vague where the disciplinary criterion is applied to conduct that directly bears upon an employee's fitness to perform the profession. Our next step, then, is to determine whether the conduct here bears directly upon Bisch's fitness to perform her profession. A police officer's job is to uphold the law, and the act of lying to the urgent care staff in order to circumvent a perceived parental-consent law could plausibly bear directly upon Bisch's fitness to be an officer. Unlike the conduct of the prison guard in *Stevens*, Bisch's untruthfulness could be

used to impeach her credibility if she were called as a witness to testify at a trial. Accordingly, protecting the integrity of the police department is a legitimate basis for imposing discipline. A number of other jurisdictions have upheld similar discipline "where the position requires high morals, control, and discipline and the off-duty conduct is in violation of specific employment policies." *Utah Dep't of Corr. v. Despain*, 824 P.2d 439, 446 (Utah Ct. App. 1991).[4] Thus, we conclude that the disciplined conduct bore directly on her fitness to be an officer.[5]

---

[4]*Despain* cites a number of similar cases in other states. 824 P.2d at 446 n.16 (citing *Wilson v. Swing*, 463 F. Supp. 555, 564 (M.D.N.C. 1978) (affirming the discharge of a police officer for engaging in an extramarital affair with another police officer because the termination "was clearly designed to further the Department's interest in its morale, discipline, effectiveness and reputation in the community"); *Puzick v. City of Colo. Springs*, 680 P.2d 1283, 1286 (Colo. App. 1983) (affirming suspension of an off-duty police officer for sexual misconduct because such conduct "has the effect of impairing the operation or efficiency of the department" or may bring "the department into disrepute"); *Millsap v. Cedar Rapids Civil Serv. Comm'n*, 249 N.W.2d 679, 686 (Iowa 1977) (affirming suspension of an off-duty police officer for intoxication and unbecoming conduct because "[i]t is well established that the image presented by police personnel to the general public is vitally important to the police mission")). We further note that *Despain* and the cases it cites deal with termination and suspension, whereas here the discipline was a written reprimand, a lesser level of discipline.

[5]Bisch also argues that the LVMPD unilaterally changed its discipline criteria outside of the collective bargaining process by disciplining her for conduct that did not actually bring the LVMPD into public discredit or actually affect her ability to perform her duties. We reject this argument, as Bisch did not present evidence that the LVMPD ever changed the regulation outside of the collective bargaining process, and the regulation does not require Bisch to *actually* bring the LVMPD into public discredit or affect her ability to perform, only that her conduct *tended* to do both of these things.

*Substantial evidence supports the EMRB's conclusion that Bisch was not disciplined for political reasons*

NRS 288.270(1)(f) provides that discrimination against an employee by a local government employer or the employer's designated representative for "political or personal reasons or affiliations" constitutes a prohibited practice. On appeal, Bisch maintains that the EMRB should have ordered that her written reprimand be stricken from her employee file because the LVMPD improperly disciplined her for political reasons in violation of that statute. In particular, Bisch contends that she received this written reprimand not as the result of a by-the-book IA investigation, but because the LVMPD wanted to use the reprimand against her in her upcoming run for sheriff. The LVMPD counters that the EMRB decision to uphold the reprimand was proper because Bisch failed to supply sufficient evidence of political motivation, she provided no evidence that the sheriff was involved in the disciplinary investigation, and the EMRB determined that the investigation was initiated following a complaint by the dog-bite victim's mother, not at the behest of the sheriff or any of the sheriff's subordinates.

In *Reno Police Protective Ass'n v. City of Reno*, 102 Nev. 98, 715 P.2d 1321 (1986), this court adopted the framework used in adjudicating federal prohibited-labor-practice claims under the National Labor Relations Act for use in resolving state prohibited-labor-practice claims against employers brought under NRS 288.270. Specifically, this court concluded that

> [a]n aggrieved employee must make a prima facie showing sufficient to support the inference that protected conduct was a motivating factor in the employer's decision. Once this is established, the burden of proof shifts to the employer to

> demonstrate by a preponderance of the evidence that the same action would have taken place even in the absence of the protected conduct. The aggrieved employee may then offer evidence that the employer's proffered "legitimate" explanation is pretextual and thereby conclusively restore the inference of unlawful motivation.

*Reno Police Protective Ass'n*, 102 Nev. at 101-02, 715 P.2d at 1323 (citing *N.L.R.B. v. Transp. Mgmt. Corp.*, 462 U.S. 393, 403 (1983), *abrogated by Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 276-78 (1994); *N.L.R.B. v. United Sanitation Serv.*, 737 F.2d 936, 939 (11th Cir. 1984)). This court adopted this test, referred to as the *Transportation Management* test, prior to the U.S. Supreme Court's modification of that test in *Greenwich Collieries*. Under the revised federal framework, it is not enough for the employee to simply put forth evidence that is capable of being believed; rather, this evidence must actually be believed by the fact-finder. *Greenwich Collieries*, 512 U.S. at 276-78. Only upon meeting this burden of persuasion does the burden of proof shift to the employer. *Id.* We find this revised framework persuasive and adopt the federal burden of persuasion for the plaintiff to establish a prima facie case of discrimination in order to shift the burden to the employer.

It appears that the EMRB applied the *Reno Police Protective Ass'n* standard, which is the pre-*Greenwich Collieries* standard and required Bisch to only satisfy the burden of production. Bisch argues that the EMRB applied the incorrect frameworks in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and *Padilla-Garcia v. Guillermo Rodriguez*, 212 F.3d 69, 77-78 (1st Cir. 2000), in determining her employment discrimination case. While the EMRB's order does not clearly state which burden of proof was applied, Bisch's argument overstates the

ambiguity in the EMRB's analysis. Despite citing the *Padilla-Garcia* test, the EMRB also cited and properly applied the *Reno Police Protective Ass'n* analysis. Thus, contrary to Bisch's assertions, the EMRB did apply the *Reno Police Protective Ass'n* analysis (albeit not as modified in *Greenwich Collieries*—which only serves to change her burden of proof to a burden of persuasion). Further, even if the EMRB did not apply the heightened standard of persuasion, there is substantial evidence to support a determination that the burden of persuasion was satisfied. We therefore proceed to examine how the EMRB applied the *Reno Police Protective Association/Greenwich Collieries* test.

Here, the EMRB first determined that Bisch had provided evidence sufficient to establish a prima facie case that her discipline was politically motivated. The EMRB noted that it was widely known throughout the LVMPD that Bisch had run for sheriff in 2006 and was planning to run again in 2010. Further, the EMRB noted that Romane, the supervisor assigned to administer the discipline, testified that when he asked the IA investigator about the report, the investigator told him it was a "tower caper"[6] and that his attempts to give Bisch a verbal warning

---

[6]Both Bisch and LVMPD agree that a tower caper is a complaint that high-ranking officials pay particular attention to. According to LVMPD, the term refers to any complaint in which a crime has potentially been committed and gets put on a list so that the head of IA can stay apprised of the investigation into the complaint. Bisch asserts that this term refers to an investigation overseen by the high-ranking officers for political purposes. The district court noted, however, that Bisch provided "no citations to any testimony or evidence in the record supporting this broad and considerably more inflammatory characterization."

were repeatedly met with resistance by those higher in the chain of command. Thus, although the parties contest the meaning of the phrase "tower caper," the EMRB determined that Bisch established a prima facie case of discrimination.

Because Bisch established a prima facie case, the EMRB correctly concluded that the burden then shifted to the LVMPD to rebut the presumption of discrimination. *See Reno Police Protective Ass'n*, 102 Nev. at 101-02, 715 P.2d at 1323. The EMRB then determined that the LVMPD produced enough evidence to satisfy its burden regarding its nondiscriminatory justification. Specifically, the EMRB's decision provides that the complaint against Bisch was initiated by a third party (the mother of the child bitten by Bisch's dog), rather than the LVMPD. It also indicates that the IA investigator properly investigated and dropped the insurance fraud allegation once it became apparent that Bisch did not commit insurance fraud. The EMRB further found that it was not until this phase of the investigation when the IA investigator confirmed that Bisch misrepresented the identity of the child. The IA investigator then contacted a deputy district attorney, who advised the LVMPD that Bisch may have committed felony identity theft. Based on that advice, the IA investigation initially concluded that Bisch had committed identity theft, a terminable offense. Upon establishing that no such felony occurred, the LVMPD limited its conclusions only to the violation of Civil Service Rule 510.2(G)(1). Ample evidence in the record supports the conclusion that this violation actually did occur. Thus, substantial evidence supports the EMRB's conclusion that the LVMPD established a nondiscriminatory reason for discipline and the burden shifted back to Bisch. *See Reno Police Protective Ass'n*, 102 Nev. at 101-02, 715 P.2d at 1323.

Bisch contends that this evidence has little to no bearing on whether her written reprimand was the result of a politically motivated investigation, and that the IA investigator should have closed the investigation after determining that no insurance fraud occurred. However, Bisch's evidence supporting an inference of discrimination is speculative, as she provides no factual basis short of one investigator's reference to the investigation as a "tower caper." There is no evidence on record that LVMPD officials actually directed the complaint to be given special attention besides this secondhand assertion, and Bisch does not provide evidence that continuing the investigation was contrary to any IA policy. Furthermore, the facts supporting the discipline itself are not in question. Accordingly, the EMRB was correct to conclude that Bisch did not satisfy her burden to show that the LVMPD's stated reasons for discipline were merely pretextual.

As this court has previously stated, we review an administrative decision for substantial evidence and will not reweigh evidence or witness credibility, nor will we substitute our judgment for the administrative judge's. *Nellis Motors v. State, Dep't of Motor Vehicles*, 124 Nev. 1263, 1269-70, 197 P.3d 1061, 1066 (2008). Accordingly, we are

unwilling to reverse a decision where the disciplined behavior actually occurred and the evidence of political motivation is speculative. We therefore conclude that the EMRB decision was supported by substantial evidence. *City of Reno v. Reno Police Protective Ass'n*, 118 Nev. 889, 894, 59 P.3d 1212, 1216 (2002).

Accordingly, we affirm the judgment of the district court in upholding the decision of the EMRB.

_____, J.
Parraguirre

We concur:

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A