915 P.2d 889 (1996)
112 Nev. 76
Mark Allen BINEGAR, Petitioner,
v.
The EIGHTH JUDICIAL DISTRICT COURT OF the State of Nevada, IN AND FOR the COUNTY OF CLARK, and the Honorable Lee Gates, District Judge, Respondents, and
The State of Nevada, Real Party in Interest.
No. 27579.
Supreme Court of Nevada.
May 1, 1996.
*890 Patricia M. Erickson, Las Vegas; Wright Judd & Winckler, Las Vegas, for Petitioner.
Frankie Sue Del Papa, Attorney General, Carson City; Stewart L. Bell, District Attorney, James Tufteland, Chief Deputy District Attorney, Clark County, for Real Party in Interest,
Dominic P. Gentile, Ltd. and Jonell Thomas, Las Vegas, for Amicus Curiae Nevada Attorneys for Criminal Justice.
Morgan D. Harris, Public Defender, Kedric A. Bassett, Deputy Public Defender, Clark County, for Amicus Curiae Clark County Public Defender's Office.
Richard A. Gammick, District Attorney, Terrence C. McCarthy, Deputy District Attorney, Washoe County; Patricia Lynch, City Attorney, William L. Gardner, Chief Deputy City Attorney, Reno; Steven Elliott, City Attorney, Sparks; Noel Waters, District Attorney, Roy L. Stralla, Deputy District Attorney, Carson City; Scott Doyle, District Attorney, Kristine L. Brown, Deputy District Attorney, Douglas County; Janet Hess, District Attorney, Storey County, for Amici Curiae (District Attorneys).

OPINION
PER CURIAM:

FACTS
This case involves the constitutionality of Nevada's reciprocal discovery statute, passed as Assembly Bill 151 (AB 151) and codified as amendments to NRS Chapter 174. AB 151 became effective on October 1, 1995. AB *891 151 added a new section to NRS Chapter 174 which is codified at NRS 174.089 and provides:
A defendant shall:
1. Not later than the date on which both parties appear before the court and announce they are ready for trial or, if such an appearance is not required, not less than 5 judicial days before trial, file and serve upon the prosecuting attorney a written notice containing the names and last known addresses of all known prospective witnesses; and
2. If any witness is expected to offer testimony as an expert witness, file and serve upon the prosecuting attorney not less than 21 days before trial or at such other time as the court may direct, a written notice containing:
(a) A brief statement regarding the subject matter on which the witness is expected to testify and the substance of his testimony; and
(b) A copy of the curriculum vitae of the witness.
The defendant has a continuing duty to disclose promptly the names and last known addresses of any additional witnesses which come to the attention of the defendant and to provide promptly any information required by subsection 2.
1995 Nev.Stat., ch. 174, § 1 at 263. AB 151 also amended the following two existing sections of NRS Chapter 174. NRS 174.235(2) now reads as follows:
At the request of the prosecuting attorney, the defendant shall permit the prosecuting attorney to inspect and copy or photograph any relevant:
(a) Written or recorded statements made by any witness, or copies thereof, within the possession, custody or control of the defendant, the existence of which is known, or by the exercise of due diligence may become known, to the defendant; and
(b) Results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the defendant, the existence of which is known, or by the exercise of due diligence may become known, to the defendant.
1995 Nev.Stat., ch. 174, § 3 at 264. NRS 174.245(2) now reads as follows:
At the request of the prosecuting attorney, the defendant shall permit the prosecuting attorney to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within his possession, custody or control. This subsection does not authorize the discovery or inspection of reports, memoranda or other internal defense documents made by the defendant, or his attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by state or defense witnesses, or by prospective state or defense witnesses, to the defendant, his agents, or attorneys.
1995 Nev.Stat., ch. 174, § 4 at 265.
Binegar was charged with one count of first degree murder. Pursuant to NRS 174.235(2), the State requested that Binegar produce any evidence regarding the psychiatric examination the defense had conducted on Binegar. On October 16, 1995, at the hearing prior to trial to determine if Binegar was required to produce the examination reports, Binegar argued that he should not have to produce the results of the examination because he did not intend to call the psychiatrist as a witness or introduce the results of the examination at trial. Binegar further claimed that NRS 174.089(1) violated his Fifth and Sixth Amendment rights because it applied to "prospective witnesses," which could be almost anybody, and was not limited to "witnesses that defendant intended to call at trial."
The prosecutor stated that he was interested in utilizing the provisions of AB 151 only as to the witnesses or materials that Binegar intended to call or introduce at trial and that he needed the report because he was unsure if Binegar was going to call the psychiatrist or introduce the report at trial. The prosecutor also stated that AB 151 was patterned after identical California Penal Code statutes which the California Supreme Court in Izazaga v. Superior Court, 54 Cal.3d 356, 285 *892 Cal.Rptr. 231, 815 P.2d 304 (1991), determined were constitutional under both the federal and California Constitutions. Binegar argued that the "identical" California Penal Code statutes were actually different from AB 151 because the California statutes were strictly limited to apply only to witnesses and materials that the defendant intended to call at trial, and NRS 174.089(1) and NRS 174.235(2) were not so limited. Therefore, Binegar argued that the Izazaga decision should be ignored.
The district judge determined that the reciprocal discovery statute was constitutional except for NRS 174.245(2), which the district judge believed authorized a prosecutor to inspect and copy objects within the control of the defendant in violation of the Fourth Amendment. The district judge denied Binegar's motion for a protective order and ordered Binegar and his counsel to turn over to the prosecutor the names and addresses of the "prospective witnesses they intended to call at trial."
On October 16, 1995, Binegar filed with this court an original petition for a writ of mandamus or in the alternative a writ of prohibition challenging the district court's order denying his motion for a protective order. On October 17, 1995, this court entered an order staying the application of the amendments to NRS Chapter 174 to Binegar pending a further order of this court.
In its reply to Binegar's writ petition, the State admitted that NRS 174.089(1), which applied to prospective witnesses, might be overly broad, requested that this court interpret "prospective witnesses" to mean witnesses that the defendant intended to call at trial, and stated that after such an interpretation this court should conclude that AB 151 is constitutional. Binegar, however, argued that the prosecution's interpretation would contravene the intent of the legislature, that this court should evaluate NRS 174.089(1), as well as the remaining sections of AB 151, as written, and that such an evaluation should lead this court to conclude that AB 151 is unconstitutional.

DISCUSSION
We initially note that this court entered an order staying the application of AB 151 to Binegar's case pending a further order from this court. Furthermore, a verdict was rendered in Binegar's case prior to the rendering of this opinion. Thus, Binegar was never subjected to the provisions of AB 151, and it appears that his petition should be denied as moot.
However, this court will still consider Binegar's writ petition, and additionally determine the adjunct issue of the constitutionality of AB 151, because the claims fall within an exception to the mootness doctrine for cases which are "capable of repetition, yet evading review." Langston v. State, Dep't of Mtr. Vehicles, 110 Nev. 342, 344, 871 P.2d 362, 363 (1994). The issue of whether AB 151 is constitutional is "capable of repetition, yet evading review," because it presents a situation whereby an important question of law could not be decided because of its timing. State v. Washoe Co. Public Defender, 105 Nev. 299, 301, 775 P.2d 217, 218 (1989). Binegar's case illustrates this fact because the order staying the application of the statute to Binegar's case was granted, and Binegar's case was concluded before this court was able to reach the issue of the constitutionality of AB 151. We note that in almost every case challenging the constitutionality of AB 151, the defendant will request this court to stay the application of the statute to his or her case pending an opinion by this court determining whether the statute is constitutional, this court will grant the stay, and the defendant's case will reach a verdict before this court can evaluate the statute. Therefore because the issue of determining the constitutionality of AB 151 is capable of repetition yet evading review, we will evaluate the constitutionality of the statute now.
To determine the constitutionality of AB 151, this court first must decide whether "prospective witnesses" in NRS 174.089(1) should be interpreted to apply only to witnesses that the defendant intends to call at trial. Additionally, this court must decide whether NRS 174.235(2) should be interpreted as written to apply to all relevant statements and reports within the defendant's control or if it should be interpreted more narrowly to apply only to statements and reports within the defendant's control that *893 the defendant intends to introduce at trial. After deciding how to interpret these two sections of AB 151, this court must then determine if these sections, as interpreted, are constitutional.
If the statute lacks clear meaning on its face, "[i]t is well established that the court must interpret [the statute] consistent with the intent of the legislature." Steward v. Steward, 111 Nev. 295, 302, 890 P.2d 777, 781 (1995); see Sheriff v. Morris, 99 Nev. 109, 117, 659 P.2d 852, 858 (1983) (concluding that it is "a fundamental principle of statutory construction that where at all possible, statutes should be construed so as to give effect to the legislative intent"). Therefore, this court must ascertain the intent of the legislature to determine how to interpret NRS 174.089(1) and NRS 174.235(2).
Based on the statements made and actions taken during the legislative sessions concerning AB 151, it appears that the legislature intended "prospective witnesses" in NRS 174.089(1) to apply to persons other than just witnesses that the defendant intended to call at trial. The original version of NRS 174.089(1) required the defendant to disclose the names and addresses only of the witnesses that the defendant intended to call at trial, but that language was expressly stricken and later substituted with the "prospective witness" language seen in the final version of NRS 174.089(1). Additionally, NRS 174.089(2), which applies to expert witnesses, requires that the defendant provide certain information to the prosecution only if the expert is expected to offer testimony. The legislature could have put such limiting language in NRS 174.089(1) but chose not to do so. Therefore, we conclude that we cannot interpret NRS 174.089(1) to apply only to witnesses that the defendant intends to call at trial because to do so would be contrary to the intent of the legislature.
We similarly conclude that we cannot interpret NRS 174.235(2) to apply only to witness statements and reports that the defendant intends to introduce at trial because to do so would contravene the legislature's intent. The legislature had the opportunity to limit NRS 174.235(2) in such a way but failed to do so. Therefore, we will evaluate the constitutionality of NRS 174.235(2) based on the fact that it applies, as written, to any relevant witness statements and any reports or results of physical examinations or scientific tests, even if the defendant does not intend to introduce those statements and materials at trial.[1]
The next step is to determine whether NRS 174.089(1) and NRS 174.235(2), as interpreted above, are constitutional. We conclude that they are not because they present a violation of an accused's rights under the Fifth Amendment of the United States Constitution.[2] Preliminarily, we note that these sections of AB 151 are not identical to the reciprocal discovery statutes enacted in California in 1990 and declared constitutional by the California Supreme Court in Izazaga v. Superior Court, 54 Cal.3d 356, 285 Cal.Rptr. 231, 815 P.2d 304 (1991), because California's statutes are specifically limited to witnesses and materials that the defendant intends to introduce at trial and these sections are not. See California Penal Code §§ 1054-1054.7 (West 1985 & Supp.1996).
In Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the United States Supreme Court considered the issue of whether a Florida notice of alibi statute violated the Fifth Amendment of the United States Constitution. Florida's statute required the defendant to give notice in advance of trial if he intended to claim an alibi and to furnish the prosecutor with information as to the place where he claimed to have been and with the names and addresses of the alibi witness he intended to use. The prosecutor had a reciprocal duty to inform the defendant of any witnesses it intended to call to rebut the alibi defense. The defendant declared an intent to claim an alibi but refused to disclose any other information, stating that the notice-of-alibi rule violated his Fifth Amendment rights.
The United States Supreme Court concluded that the privilege against self-incrimination *894 was not violated by the notice-of-alibi statute. The Court stated that the defendant would have been forced to reveal the identity of the alibi witness at trial, and that
[a]t most, the rule only compelled the petitioner to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that the petitioner from the beginning planned to divulge at trial. Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself.
Id. at 85, 90 S.Ct. at 1898.
The California Supreme Court used the logic from Williams and determined that California's reciprocal discovery statutes did not violate the Fifth Amendment because they did nothing more than compel the defendant to accelerate the timing of disclosures that the defendant intended to divulge at trial anyway. Izazaga, 285 Cal.Rptr. at 236-41, 815 P.2d at 309-314. However, we have concluded that California's reciprocal discovery statutes are fundamentally different from AB 151 and therefore AB 151 is not saved by the reasoning of Izazaga.
We conclude that NRS 174.089(1) and NRS 174.235(2) have a greater effect than simply compelling the defendant to accelerate the timing of disclosures that the defendant intended to divulge at trial. Under NRS 174.089(1), the defendant would be forced to disclose names and addresses of prospective witnesses, which would likely include an extremely large class of individuals and could certainly include witnesses that the defendant never intended to introduce at trial. Under NRS 174.235(2), the defendant would be forced to disclose witness statements and the results or reports of mental and physical examinations and scientific tests or experiments, even if the defendant never intended to introduce the statements or materials at trial. In such circumstances the defendant would be compelled to do more than simply accelerate the timing of intended disclosures of materials; the defendant would be forced to disclose information that he never intended to disclose at trial, some of which could be incriminating. Such a situation would violate a defendant's constitutional guaranties against self-incrimination.
The final issue concerns the effect of this court's rulings on the constitutionality of NRS 174.089(1) and NRS 174.235(2) on the remaining sections of AB 151, namely NRS 174.089(2) and NRS 174.245(2). If a law passed by the legislature is "`constitutional in part, but unconstitutional as to some of its provisions, that which is constitutional will be sustained, unless the whole scope and object of the law is defeated by rejecting the objectionable features.'" Jones v. State, 85 Nev. 411, 415, 456 P.2d 429, 431 (1969) (quoting State v. Westerfield, 23 Nev. 468, 474, 49 P. 119, 121 (1897)).
Without reaching the issue of whether NRS 174.089(2) and NRS 174.245(2) are constitutional, we conclude that those sections cannot be sustained because the scope and object of AB 151 is defeated with the rejection of NRS 174.089(1) and NRS 174.235(2). Therefore, NRS 174.089(2) and NRS 174.245(2) must also be stricken.
Even if we did embark on a course to interpret the relevant sections of AB 151 to apply only to witnesses and materials that the defendant intended to introduce at trial, thereby bringing these sections into compliance with Williams[3], other constitutional problems would remain.
First, NRS 174.089(1) does not contain a reciprocal duty for the State to comply with requirements equivalent to those placed upon the defendant to provide names and addresses of witnesses, and such a situation might violate a criminal defendant's due process rights. See Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). Therefore, we would have been required to *895 (1) determine whether we should interpret NRS 174.089(1) to contain a reciprocal duty for the State to comply with; and (2) determine whether NRS 174.089(1), however interpreted, violated a criminal defendant's due process rights.
Second, NRS 174.245(2) appears to give the State the authority to improperly search and seize a criminal defendant's property in violation of the Fourth Amendment of the United States Constitution. The section states that upon the request of the prosecutor, the criminal defendant shall permit the prosecutor to inspect the defendant's "buildings or places," which likely includes places such as the defendant's home and business where the defendant has a reasonable expectation of privacy. The section contains no safeguards or procedures to prevent the State from using NRS 174.245(2) to circumvent search warrant requirements which the State must usually satisfy before conducting a search of a place in which the defendant has a reasonable expectation of privacy, and the lack of such safeguards or procedures might create a constitutional infirmity in NRS 174.245(2).

CONCLUSION
We conclude that Binegar's contentions have merit.[4] After evaluating AB 151, we conclude that we cannot interpret NRS 174.089(1) and NRS 174.235(2) to apply only to witnesses and materials that the defendant intends to call at trial because to do so would contravene the legislature's intent. As written, those sections present unconstitutional violations of the Fifth Amendment of the United States Constitution because they require a defendant to do more than accelerate the timing of disclosures that the defendant intended to divulge at trial and potentially forces the defendant to incriminate himself in violation of constitutional guarantees.
Additionally, we conclude that the remaining sections of AB 151, namely NRS 174.089(2) and NRS 174.245(2), cannot be sustained because the scope and object of AB 151 was defeated with the rejection of NRS 174.089(1) and NRS 174.235(2). Therefore, NRS 174.089(2) and NRS 174.245(2) must also be invalidated.
NOTES
[1] We recognize the fact that the Nevada legislature will reconvene in less than one year and that they can redraft these sections to reflect a different intent if they so choose.
[2] "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend V.
[3] Even if the relevant sections of AB 151 were in compliance with Williams, and therefore with the United States Constitution, this court would still have to evaluate the statute under the Fifth Amendment provisions of the Nevada Constitution. See Nev. Const. art. 1, § 8. Furthermore, this court is under no compulsion to follow decisions of the United States Supreme Court in determining whether a statute violates the Nevada Constitution. Zale-Las Vegas v. Bulova Watch, 80 Nev. 483, 501-02, 396 P.2d 683, 693 (1964). However, this court has not considered the issue of whether NRS 174.089(1) and NRS 174.235(1) would violate article 1, section 8 of the Nevada Constitution if they were interpreted to apply only to witnesses and materials that the defendant intended to introduce at trial.
[4] Issuance of a writ will provide no effective relief for Binegar because by virtue of this court's stay order, the statute was never applied to him. Accordingly, it is unnecessary to issue the requested writ. Nevertheless, this constitutes this court's final decision respecting the important public policy issue of whether the statute was constitutional.