136 Nev., Advance Opinion 20

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JOSE VALDEZ-JIMENEZ,<br>Petitioner,<br>vs.<br>THE EIGHTH JUDICIAL DISTRICT<br>COURT OF THE STATE OF NEVADA,<br>IN AND FOR THE COUNTY OF<br>CLARK; AND THE HONORABLE<br>MARK B. BAILUS, DISTRICT JUDGE,<br>Respondents,<br>    and<br>THE STATE OF NEVADA,<br>Real Party in Interest. | No. 76417 |



FILED

APR 09 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
    DEPUTY CLERK

| | |
|---|---|
| AARON WILLARD FRYE,<br>Petitioner,<br>vs.<br>THE EIGHTH JUDICIAL DISTRICT<br>COURT OF THE STATE OF NEVADA,<br>IN AND FOR THE COUNTY OF<br>CLARK; AND THE HONORABLE<br>JERRY A. WIESE, DISTRICT JUDGE,<br>Respondents,<br>    and<br>THE STATE OF NEVADA,<br>Real Party in Interest. | No. 76845 |

Original petitions for writs of mandamus challenging district court orders denying pretrial motions to reduce or vacate bail.

*Petitions denied.*

Darin F. Imlay, Public Defender, and Nancy M. Lemcke and Christy L. Craig, Deputy Public Defenders, Clark County; Civil Rights Corps and Charles Lewis Gerstein, Alec George Karakatsanis, and Olevia Boykin, Washington, D.C.,
for Petitioners.

SUPREME COURT
OF
NEVADA

(O) 1947A

20-13452

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Alexander G. Chen and Krista D. Barrie, Chief Deputy District Attorneys, Clark County,
for Real Parties in Interest.

Armstrong Teasdale LLP and Tracy A. DiFillippo, Las Vegas,
for Amicus Curiae American Bail Coalition.

Law Office of Franny Forsman and Franny Forsman, Las Vegas,
for Amicus Curiae National Law Professors of Criminal, Procedural, and Constitutional Law.

Law Office of Lisa Rasmussen and Lisa Rasmussen, Las Vegas,
for Amicus Curiae Social Scientists.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, HARDESTY, J.:

We are asked to consider what process is constitutionally required when a district court sets bail in an amount that the defendant cannot afford, resulting in pretrial detention. Though the bail issue is moot because petitioners have been convicted and are no longer subject to pretrial detention, we nevertheless elect to reach the issue because it is a matter of public importance and is capable of repetition but evading review.

The right to reasonable bail is guaranteed by the Nevada Constitution for individuals who commit offenses other than capital offenses or first-degree murder. Bail serves the important function of allowing a defendant to be released pending trial while at the same time ensuring that he or she will appear at future proceedings and will not pose

a danger to the community. When bail is set in an amount the defendant cannot afford, however, it deprives the defendant of his or her liberty and all its attendant benefits, despite the fact that he or she has not been convicted and is presumed innocent. To safeguard against pretrial detainees sitting in jail simply because they cannot afford to post bail, we conclude that the following due process protections are constitutionally required.

A defendant who remains in custody following arrest is constitutionally entitled to a prompt individualized determination on his or her pretrial custody status. The individualized determination must be preceded by an adversarial hearing at which the defendant is entitled to present evidence and argument concerning the relevant bail factors. The judge must consider the factors set forth in NRS 178.4853 and may impose bail only if the State proves by clear and convincing evidence that it is necessary to ensure the defendant's presence at future court proceedings or to protect the safety of the community, including the victim and the victim's family. If the district court determines that bail, rather than nonmonetary conditions, is necessary, the judge must consider the defendant's financial resources as well as the other factors set forth in NRS 178.498 in setting the amount of bail, and the judge must state his or her reasons for the bail amount on the record. Accordingly, we elect to entertain the writ petitions, but we deny the petitions because there is no relief we can provide to petitioners.

## FACTS AND PROCEDURAL HISTORY

Petitioners Aaron Frye and Jose Valdez-Jimenez were arrested and charged with felony offenses. Bail was set for each petitioner in the justice court. Rather than proceed by criminal complaint in the justice court, the State obtained an indictment from a grand jury. Upon the

 

indictment returns, the district court set bail in the amount requested by the State. For Frye, bail was set in the amount of $250,000 based on the State's representation that he was already in custody on that amount, and for Valdez-Jimenez, bail was set in the amount of $40,000, the amount on which he was in custody in another case. Neither petitioner was present at the indictment return. Each petitioner was later arraigned in district court and subsequently filed a motion to vacate or reduce the bail amount. In their motions, petitioners contended that the bail amounts were excessive and that the bail process violated their right to due process and equal protection. Relying on *United States v. Salerno*, 481 U.S. 739 (1987), they argued that setting bail in an amount they could not afford was tantamount to a detention order, and therefore, before the district court could set such bail, it was required to hold an adversarial hearing at which it considered their financial ability to pay and the State proved that bail was the least restrictive means of ameliorating any risk of flight or danger to the community.

The district court held hearings on the motions and denied them. In denying Frye's motion, the district judge, who was not the judge who set bail on the indictment warrant, indicated that its role was limited to determining whether the bail amount was an abuse of discretion:

> Bond was previously set by a competent judge. I don't find there was any abuse of discretion. In order to assure the defendant is present in court and to protect the community, and the other things that are considered under the various statutes dealing with the amount of bond, I don't find that an amount of $250,000 is unreasonable.

The district court added, "The only thing that's before me today is whether or not the $250,000 bail that was set by a different judge was wrong; okay.

I can't find that it was wrong. Would I have imposed the same amount of bail? I don't know."

The district judge who considered and denied Valdez-Jimenez's motion found that Nevada's statutory scheme, and not *Salerno*, controlled and required that good cause be shown before an accused could be released without bail. The judge stated that, in denying the motion, he had considered the statutory factors for release with bail and without bail, but the judge did not discuss those factors or otherwise explain the basis for the bail amount.

Both defendants filed a petition for a writ of mandamus[1] in this court challenging the bail process and decisions. We elect to consolidate these petitions for disposition. *Cf.* NRAP 3(b)(2).

### DISCUSSION

*We elect to entertain the petitions for a writ of mandamus*

A writ of mandamus is appropriate "to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) (footnote omitted). Because a writ of mandamus is an extraordinary remedy, it is within our complete discretion whether to consider it. *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008). Writ relief is generally available only in "cases where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170.

---

[1]We note that Frye's petition is entitled alternatively as a petition for a writ of habeas corpus, but in light of this opinion, the request for habeas relief is denied.

 

Since filing their petitions, both Frye and Valdez-Jimenez have pleaded guilty and are no longer subject to pretrial detention. The State therefore contends that the petitions should be denied because the issues have been rendered moot. However, petitioners contend that the constitutional issues raised by their bail proceedings are important and will likely arise again but evade review. We agree with petitioners.

As a general rule, this court will decline to hear a moot case. *See Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010). That general rule comports with our duty "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles of law which cannot affect the matter in issue before it." *NCAA v. Univ. of Nev.*, 97 Nev. 56, 57, 624 P.2d 10, 10 (1981). Therefore, "a controversy must be present through all stages of the proceeding, and even though a case may present a live controversy at its beginning, subsequent events may render the case moot." *Personhood Nev.*, 126 Nev. at 602, 245 P.3d at 574 (citations omitted).

Even where a case is moot, however, this court "may consider it if it involves a matter of widespread importance that is capable of repetition, yet evading review." *Id.* The party seeking to overcome mootness must prove "that (1) the duration of the challenged action is relatively short, (2) there is a likelihood that a similar issue will arise in the future, and (3) the matter is important." *Bisch v. Las Vegas Metro. Police Dep't*, 129 Nev. 328, 334-35, 302 P.3d 1108, 1113 (2013).

The issues presented here are within the exception to the mootness doctrine. First, given the time restraints inherent in criminal cases, most bail orders are short in duration and the issues concerning bail

and pretrial detention become moot once the case is resolved by dismissal, guilty plea, or trial.[2] *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) ("Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted.").

As to the second requirement—"a likelihood that a similar issue will arise in the future"—we take this opportunity to clarify that this does not necessitate the similar issue to recur with respect to petitioners personally. As the dissent highlights, federal law requires "a reasonable expectation that *the same complaining party* will be subjected to the same action again" in order to satisfy the capable-of-repetition-yet-evading-review exception to the mootness doctrine. *United States v. Sanchez-Gomez*, ___ U.S. ___, ___, 138 S. Ct. 1532, 1540 (2018) (emphasis added). But Nevada courts are not bound by the federal standard for determining mootness. *See State v. Glusman*, 98 Nev. 412, 418, 651 P.2d 639, 643 (1982) (recognizing that it is within this court's inherent discretion "to consider issues of substantial public importance which are likely to recur," despite any intervening events that have rendered the matters moot). And our jurisprudence has implicitly rejected "the same complaining party"

---

[2]The dissent disagrees and cites several decisions by this court to argue that challenges to bail proceedings do not evade review. But the dissent ignores that two of the cases were resolved on mootness grounds because the defendant had already been released, *see Black v. Eighth Judicial Dist. Court*, Docket No. 76472 (Order Denying Petition, Sept. 14, 2018); *Sherard v. Eighth Judicial Dist. Court*, Docket No. 76398 (Order Denying Petition, Sept. 14, 2018), and the other case involved the district court's application of bail statutes and not the more complicated constitutional questions raised here, *see Cameron v. Eighth Judicial Dist. Court*, 135 Nev. 214, 445 P.3d 843 (2019).

requirement, instead focusing on whether the issues raised by the party are likely to recur under similar circumstances. *See, e.g., Solid v. Eighth Judicial Dist. Court*, 133 Nev. 118, 120, 393 P.3d 666, 670 (2017) (reviewing petitioner's challenge to his criminal trial where, although his conviction rendered the issue moot, the same issue was likely to recur in other criminal trials); *Haney v. State*, 124 Nev. 408, 410-11, 185 P.3d 350, 352 (2008) ("Although our ruling in this case will not benefit Haney directly because his sentence has expired, we nonetheless address the legal questions presented because they are capable of repetition, yet evading review."); *Miller v. State*, 113 Nev. 722, 724 n.1, 941 P.2d 456, 458 n.1 (1997) (noting that defendants' sentencing claims warranted review even if "moot because they challenge an activity that is capable of repetition yet evades review"); *Binegar v. Eighth Judicial Dist. Court*, 112 Nev. 544, 548, 915 P.2d 889, 892 (1996) (concluding that though petitioner's claim was moot, review was appropriate because the issue of the constitutionality of the statute was capable of repetition).

The dissent's strict reliance on federal law ignores our precedent defining the contours of our mootness exception.[3] Though the

---

[3]We are not unique in allowing this "capable of repetition" factor to be met even where the issue is not likely to recur with respect to the same complaining party. *See, e.g., In re Webb*, 440 P.3d 1129, 1131 (Cal. 2019) (addressing bail issue, which was moot as to the defendant, because it was an important issue likely to recur); *Dutkiewicz v. Dutkiewicz*, 957 A.2d 821, 828 (Conn. 2008) (recognizing mootness exception where there is "a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate" (internal quotation marks omitted)); *State v. Mercedes*, 183 A.3d 914, 924 (N.J. 2018) (reviewing moot pretrial detention issue that

dissent suggests that our three-factor test in *Bisch* presents an inexplicable departure from the federal mootness exception, our jurisprudence reveals that *Bisch* did not alter our capable-of-repetition-yet-evading-review exception to the mootness doctrine but rather delineated the three factors that must be met. *See, e.g., Traffic Control Servs., Inc. v. United Rentals Nw., Inc.*, 120 Nev. 168, 171-72, 87 P.3d 1054, 1057 (2004) (recognizing the exception applies when the duration of the challenged action is "relatively short" and there is a "likelihood that a similar issue will arise in the future"); *State v. Washoe Cty. Pub. Def.*, 105 Nev. 299, 301, 775 P.2d 217, 218 (1989) (explicitly recognizing the "capable of repetition, yet evading review" exception to address an important question of law). And while the dissent urges us not to apply our capable-of-repetition exception as set forth in *Bisch*, the dissent fails to provide any compelling reason for departing from our long-standing precedent. *See Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) ("[U]nder the doctrine of stare decisis, we will not overturn [precedent] absent compelling reasons for so doing. Mere disagreement does not suffice." (footnotes omitted)).

To reiterate, the second factor of the mootness exception requires that the question presented is likely to arise in the future with respect to the complaining party or individuals who are similarly situated to the complaint. We conclude that petitioners have satisfied this

---

was "'capable of repetition' in countless detention hearings yet may evade review if other defendants plead guilty before similar challenges can be resolved"); *Saunders v. Hornecker*, 344 P.3d 771, 775 (Wyo. 2015) (addressing challenge to bail where defendant had already been convicted because the issue was capable of repetition with respect to other defendants).

requirement. Petitioners have provided documents from other criminal cases in which defendants have raised similar arguments before the justice court or district court about the process of setting bail. Because the constitutional issues concerning the inquiries and findings required for setting bail are relevant in many criminal cases, they will arise in the future.[4]

Finally, petitioners have demonstrated that these are issues of widespread importance, as they affect many arrestees and involve the constitutionality of Nevada's bail system. Deciding these issues would provide guidance to judges who are responsible for assessing an arrestee's custody status. Because the petitions raise legal questions of first impression and statewide importance that are likely to recur in other cases, we choose to consider the issues on the merits. *See Archon Corp. v. Eighth Judicial Dist. Court*, 133 Nev. 816, 822-23, 407 P.3d 702, 708 (2017) (permitting advisory mandamus "to address the rare question that is 'likely of significant repetition prior to effective review,' so that our opinion would assist other jurists, parties, or lawyers" (internal quotation marks

---

[4]The dissent also contends that the questions raised in the petitions are unlikely to recur because Clark County has recently established an "Initial Appearance Court" and has also modified its bail and pretrial release procedures in response to the COVID-19 pandemic. While Clark County's Initial Appearance Court is laudable and a significant step toward addressing an arrestee's custody status in a timely manner, it applies solely to the Eighth Judicial District and is not available to all arrestees. And, any court order that was entered to address the pandemic is temporary in nature and would not permanently alter the process for pretrial release. The dissent further points out that the Legislature recently formed an interim committee to study and report on pretrial detention. Though legislative amendments warrant consideration, the issue here is whether the legislation as it exists today comports with constitutional requirements.

omitted)). Furthermore, we conclude that a writ of mandamus is the appropriate vehicle for raising these issues, as petitioners have no other adequate remedy. *See* NRS 34.160; NRS 34.170.

*The constitutionality of the bail process*

Petitioners challenge the process by which bail is set following an indictment. Petitioners argue that Nevada's statutory bail scheme and the district court's imposition of money bail in an amount they could not pay denied them substantive and procedural due process and equal protection under the Nevada and United States Constitutions. Petitioners argue that because unaffordable bail is equivalent to a pretrial detention order, and the liberty interest of an arrestee is a fundamental right, they were entitled to an adversarial hearing at which the State demonstrated that the amount of bail was necessary to further the State's interests—i.e., to ensure the defendant's appearance in court and to protect the safety of the community. They contend that because Nevada's current statutory scheme for pretrial release makes money bail the presumption, requires the defendant to show good cause for release on nonmonetary conditions, and lacks procedural safeguards, it is unconstitutional. We review each of these contentions in turn.

*Bail in an amount greater than necessary to ensure the defendant's appearance and the safety of the community is unconstitutional*

Typically, a pretrial release decision is a matter within the sound discretion of the trial court. *See In re Wheeler*, 81 Nev. 495, 500, 406 P.2d 713, 716 (1965). However, the issues raised by the petitioners involve the meaning or applicability of constitutional provisions, which present questions of law we review de novo. *Manning v. State*, 131 Nev. 206, 209-10, 348 P.3d 1015, 1017-18 (2015).

 

Article 1, section 7 of the Nevada Constitution creates a right to bail before conviction: "All persons shall be bailable by sufficient sureties; unless for Capital Offenses or murders punishable by life imprisonment without possibility of parole when the proof is evident or the presumption great." Article 1, section 6 of the Nevada Constitution proscribes excessive bail, which we have explained means that "[b]ail must not be in a prohibitory amount, more than the accused can reasonably be expected under the circumstances to give, for if so it is substantially a denial of bail." *Ex parte Malley*, 50 Nev. 248, 253, 256 P. 512, 514 (1927) (quoting 6 C.J. *Bail* § 222 (1916)), *rejected on other grounds by Wheeler*, 81 Nev. 495, 406 P.2d 713. Thus, under our constitution, individuals such as petitioners, who are accused of committing noncapital, non-first-degree-murder offenses, have a right to bail in a reasonable amount. *See id.*; *Wheeler*, 81 Nev. at 498-99, 406 P.2d at 715.

The amount of bail that is reasonable will depend on the circumstances of the individual. However, because the right of an individual to reasonable bail before trial is a fundamental one, *see Salerno*, 481 U.S. at 750 (describing "the individual's strong interest in liberty" as "fundamental"), bail must not be in an amount greater than necessary to serve the State's interests. As the United States Supreme Court said, "This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (citation omitted); *see also Salerno*, 481 U.S. at 755 ("In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception.").

The purpose of bail in Nevada is twofold: to ensure "the presence of one charged at all times when demanded," *Malley*, 50 Nev. at 253-55, 256 P. at 514, and to protect the community, including the victim and the victim's family, *see* Nev. Const. art. 1, § 8A(1)(c) (requiring consideration of the safety of the victim and the victim's family in setting bail). Thus, the right to release before trial is conditioned on adequate assurance that the defendant will appear at all court proceedings and that he or she will not be a danger to other persons. Accordingly, for bail to be reasonable, it must relate to one of these two purposes—to ensure the appearance of the accused at all stages of the proceedings or to protect the safety of the victim and the community. Otherwise, it will necessarily be excessive in violation of the Nevada Constitution's bail provisions.

Our conclusion that bail may be imposed only where necessary to ensure the defendant's appearance or to protect the community is also mandated by substantive due process principles. Because bail may be set in an amount that an individual is unable to pay, resulting in continued detention pending trial, it infringes on the individual's liberty interest. And given the fundamental nature of this interest, substantive due process requires that any infringement be necessary to further a legitimate and compelling governmental interest. *Cf. Salerno*, 481 U.S. at 746, 750 (stating that a government action violates substantive due process when it "interferes with rights implicit in the concept of ordered liberty" (internal quotation marks omitted)); *Bearden v. Georgia*, 461 U.S. 660, 668-69 (1983) (holding that due process and equal protection principles preclude a court from ordering a person incarcerated for failing to pay a fine or restitution "through no fault of his own" without first "considering whether adequate alternative methods of punishing the defendant are available"). Thus, to

comport with substantive due process, bail must be necessary to further the State's compelling interests in bail—that is, to prevent the defendant from being a flight risk or a danger to the community.

Having established the substantive inquiries the district court must make in assessing a defendant's custody status before trial, we now turn to the procedural requirements attendant to that decision.

*An individualized bail hearing must be held within a reasonable time after arrest for defendants who remain in custody*

Petitioners challenge the procedure for setting bail following the return of an indictment. Nevada's statutes provide that upon return of an indictment, the district court may fix the amount of bail in the arrest warrant, NRS 173.155, and the arrested person shall be brought promptly before a magistrate for the purpose of admission to bail, NRS 173.195. Though petitioners contend that they should have been present and a hearing should have been held before bail was set in the arrest warrant, none of the cases they cite require such a conclusion. Rather, the United States Supreme Court decisions on which petitioners rely do not suggest that a hearing must be held before any detention can occur. *See, e.g., Salerno*, 481 U.S. at 747 (stating that an arrestee is entitled to "a prompt" hearing under the federal Bail Reform Act). Furthermore, courts generally have recognized that an initial bail amount may be set pursuant to a standardized bail schedule, as long as the accused is given the opportunity soon after arrest to have an individualized determination where the accused's financial ability to pay is considered. *See, e.g., Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018), *cert. denied*, ___ U.S. ___, 139 S. Ct. 1446 (2019); *ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018); *see also In re Humphrey*, 228 Cal. Rptr. 3d 513, 540-41 (Ct. App. 2018), *appeal pending*, 417 P.3d 769 (Cal. 2018). Petitioners provide no authority

requiring an adversarial hearing to be held before bail can be set in an arrest warrant. Thus, we conclude that the district court's initial bail setting in the post-indictment arrest warrant did not run afoul of the Nevada or United States Constitutions.

We recognize, however, that an accused is entitled to a prompt individualized hearing on his or her custody status after arrest. Generally, such a hearing occurs at the initial appearance, or arraignment. Though "[t]here is no statutory designation of a specific time within which an arraignment shall be held after the arrest of an accused under an indictment," this court presumes that an arraignment will be conducted within "a reasonable time." *Tellis v. Sheriff of Clark Cty.*, 85 Nev. 557, 559-60, 459 P.2d 364, 365 (1969). We have explained that one of the primary reasons for a speedy arraignment is to protect the defendant's "right to due process of law and to assure that he is not left to languish in jail." *Id.* at 559, 459 P.2d at 365. Accordingly, we stress that where a defendant remains in custody following indictment, he or she must be brought promptly before the district court for an individualized custody status determination.[5] We next address what procedures are constitutionally required in making such a determination.

---

[5]The State asserts that petitioners already received an individualized hearing in justice court, implying that they were not entitled to an individualized hearing in the district court. However, the bail proceedings and amount set in the justice court do not alleviate the need for an individualized determination in the district court following indictment. *See Cameron*, 135 Nev. at 216, 445 P.3d at 844 (noting that the district court is "not constrained by the justice court's bail determination" when a case is transferred to the district court as a result of a grand jury indictment and is not bound over from the justice court).

*Heightened procedural due process requirements apply when bail is set in an amount the defendant cannot afford*

Petitioners contend that the current statutory bail scheme lacks sufficient procedural protections to ensure that bail is necessary and not excessive. In determining what procedural due process requires, it is helpful to review the process for setting bail in Nevada. In doing so, we stress that for many individuals who are arrested, bail will not be necessary. Where the defendant presents little to no flight risk or danger to the community, release on personal recognizance or nonmonetary conditions will likely be appropriate, in which case bail in any amount would be excessive. On the other hand, where the defendant has an extensive history of failing to appear for court proceedings and few ties to the community, bail will likely be necessary.

In order to determine whether bail is necessary, the district court should consider first whether, given the individual circumstances of the defendant, including his or her character and ties to the community, his or her criminal history, and the nature of and potential sentence for the alleged offenses, release on personal recognizance or subject to nonmonetary conditions would be sufficient to reasonably ensure the purposes of bail are met. *See* NRS 178.4853 (setting forth factors for the district court to consider in determining what pretrial release conditions should be imposed). If so, then no bail should be set, as any amount of bail would be excessive. But if, after a consideration of all of the relevant factors, the court finds that no combination of nonmonetary conditions would be sufficient to reasonably ensure the defendant's appearance or the safety of the community, then the court must determine the amount of bail that is necessary. For this determination, the court must take into consideration the defendant's financial resources as well as the other factors relevant to

Supreme Court
of
Nevada

(O) 1947A

the purposes of bail. *See* NRS 178.498 (setting forth factors to consider in setting the amount of bail). Though there is no constitutional requirement that bail be in an amount the defendant can afford to pay, *see Malley*, 50 Nev. at 253-55, 256 P. at 514 (stating "a mere inability to procure bail in a certain amount does not of itself make such amount excessive"), consideration of how much the defendant can afford is essential to determining the amount of bail that will reasonably ensure his or her appearance and the safety of the community.

Petitioners' challenge to this bail process focuses on the situation where the court imposes bail in an amount that is beyond the defendant's ability to pay, resulting in the defendant remaining in jail before trial. Relying heavily on *Salerno*, 481 U.S. 739, they argue that because bail in an amount a person cannot afford has the same result as a detention order, it necessitates heightened procedural due process protections.

In *Salerno*, the United States Supreme Court upheld the constitutionality of pretrial detention provisions in the Bail Reform Act of 1984, which allowed a federal court to detain an individual if no release conditions would reasonably ensure the safety of the community. Under those provisions, a judicial officer could order an arrestee detained only after holding "a full-blown adversary hearing," at which the defendant had the right to be represented by counsel and present evidence and the government proved by clear and convincing evidence "that no conditions of pretrial release can reasonably assure the safety of other persons and the community," and the judicial officer stated his or her findings of fact in writing. *Id.* at 742, 750. The Supreme Court found that the Bail Reform Act was constitutional because it was "narrowly focuse[d]" on the



government's overwhelming interest in crime prevention and provided extensive procedural safeguards, particularly the State's burden of proof by clear and convincing evidence. *Id.* at 750-51.

We agree with petitioners that when bail is set in an amount that results in continued detention, it functions as a detention order, and accordingly is subject to the same due process requirements applicable to a deprivation of liberty. Procedural due process requires that any government action depriving a person of liberty must "be implemented in a fair manner." *See id.* at 746. We conclude that to ensure the accuracy of the court's bail assessment and to comport with procedural due process, additional procedural safeguards are necessary before bail may be set in an amount that results in continued detention. We find several protections identified by *Salerno* in the federal Bail Reform Act to be of particular importance in safeguarding against erroneous de facto detention orders. *See United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991) (holding that a court may impose a financial condition the defendant cannot meet but, in such a situation, the court "must satisfy the procedural requirements for a valid *detention* order"); *Hernandez v. Bennett-Haron*, 128 Nev. 580, 587, 287 P.3d 305, 310 (2012) (stating that this court looks to federal precedent for guidance in determining what procedures satisfy due process).

First, as we stated earlier, when the State requests bail to be set following an indictment, the defendant is entitled to a prompt individualized hearing on his or her custody status. At the hearing, the defendant shall have the right to be represented by counsel and shall be afforded the right to testify and present evidence. *See McCarty v. State*, 132 Nev. 218, 222-24, 371 P.3d 1002, 1005-06 (2016) (discussing defendant's

right to counsel at an initial appearance and during critical stages). Second, given the important nature of the liberty interest at stake, the State has the burden of proving by clear and convincing evidence that no less restrictive alternative will satisfy its interests in ensuring the defendant's presence and the community's safety. *See Foucha v. Louisiana*, 504 U.S. 71, 81 (1992) (holding that a state's confinement scheme for individuals found to be not guilty by reason of insanity violated due process because it did not provide for an adversarial hearing at which the State proved by clear and convincing evidence that the individual presented a danger to the community); *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) ("This Court has mandated an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" (quoting *Addington v. Texas*, 441 U.S. 418, 424-25 (1979))). And third, the district court must make findings of fact and state its reasons for the bail decision on the record. Transcribed oral findings will satisfy this requirement as long as those findings provide a sufficient basis for the decision. *Cf. United States v. Sesma-Hernandez*, 253 F.3d 403, 405-06 (9th Cir. 2001).

Lastly, we consider petitioners' constitutional challenge to NRS 178.4851(1), which requires a showing of "good cause" before a person may be released without bail.[6] We agree that this "good cause" requirement to

---

[6]NRS 178.4851(1) states:

> Upon a showing of good cause, a court may release without bail any person entitled to bail if it appears to the court that it can impose conditions on the person that will adequately protect the health, safety and welfare of the community and ensure that the person will appear at all times and places ordered by the court.

SUPREME COURT
OF
NEVADA

(O) 1947A

release a person on nonmonetary conditions undermines the constitutional right to nonexcessive bail, as it excuses the court from considering less restrictive conditions before determining that bail is necessary. Furthermore, it effectively relieves the State of its burden of proving that bail is necessary to ensure the defendant's appearance or protect the community. Accordingly, we conclude that the "good cause" requirement in NRS 178.4851(1) is unconstitutional. Because the remaining portion of the statute may be given legal effect and accords with the legislative intent that an individual may be released without bail if other nonmonetary conditions are sufficient, the "good cause" language may be severed from NRS 178.4851(1). *See Cty. of Clark v. City of Las Vegas*, 92 Nev. 323, 336-37, 550 P.2d 779, 788 (1976) (setting forth the severability test).

## CONCLUSION

When bail is set at an amount greater than necessary to serve the purposes of bail, it effectively denies the defendant his or her rights under the Nevada Constitution to be "bailable by sufficient sureties" and for bail not to be excessive. Thus, bail may be imposed only where it is necessary to reasonably ensure the defendant's appearance at court proceedings or to protect the community, including the victim and the victim's family. Because of the important liberty interest at stake when bail has the effect of detaining an individual pending trial, we hold that a defendant who remains in custody after arrest is entitled to an individualized hearing at which the State must prove by clear and convincing evidence that bail, rather than less restrictive conditions, is necessary to ensure the defendant's appearance at future court proceedings or to protect the safety of the community, and the district court must state

 

its findings and reasons for the bail decision on the record. Because petitioners in these cases are no longer subject to pretrial detention, we deny these petitions for writs of mandamus.

_____, J.
Hardesty

We concur:

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

PICKERING, C.J., concurring in part and dissenting in part:

This court should deny these writ petitions as moot, without venturing an unconstitutionally advisory opinion on legal issues that cannot affect the parties to this case. The Nevada Constitution separates the powers of Nevada government into three departments, "the Legislative,—the Executive and the Judicial," and provides that "no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others." Nev. Const. art. 3, § 1(1). "Judicial Power is the authority to hear and determine justiciable controversies." *Galloway v. Truesdell*, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967) (emphasis and internal quotation omitted). Once a controversy becomes moot, it is no longer justiciable. *Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010). Without a justiciable controversy, the power of the court to pronounce on the law ends: "[T]he duty of every judicial tribunal is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles of law which cannot affect the matter in issue before it." *Nat'l Collegiate Athletic Ass'n v. Univ. of Nev.*, 97 Nev. 56, 57, 624 P.2d 10, 10 (1981).

Both Valdez-Jimenez and Frye pleaded guilty in 2019. They are in prison, serving the sentences of imprisonment their judgments of conviction imposed. Petitioners' confinement pursuant to their judgments of conviction renders their challenge to the bail proceedings by which they had been confined—pretrial—moot and nonjusticiable. *Compare United States v. Sanchez-Gomez*, ___ U.S. ___, ___, 138 S. Ct. 1532, 1540-41 (2018) (holding defendants' challenge to their pretrial custody restraints moot and nonjusticiable because their guilty pleas ended their pretrial custody), *with*

SUPREME COURT
OF
NEVADA

(O) 1947A

*United States v. Salerno*, 481 U.S. 739, 744 n.2 (1987) (holding that case remained justiciable where the defendant remained confined pursuant to the pretrial detention order he challenged); *but see id.* at 758 (questioning majority's justiciability determination given the defendant's conviction on another charge) (Marshall, J., dissenting).

Because this court cannot grant relief to Valdez-Jimenez or Frye with respect to their now-terminated pretrial confinement, it should deny their petitions as moot. *See, e.g., Black v. Eighth Judicial Dist. Court*, Docket No. 76472, at 1* (Order Denying Petition, Sept. 14, 2018) (denying writ petition challenging bail proceeding as moot since "petitioner is no longer in custody and fails to demonstrate that this issue is capable of repetition yet evading review"); *Sherard v. Eighth Judicial Dist. Court*, Docket No. 76398 (Order Denying Petition, Sept. 14, 2018) (same); *accord Valdez-Jimenez v. Lombardo*, Case No. 2:19-cv-00581-RFB-VCF (Order Granting Motion to Dismiss (ECF Nos. 25, 27) and Dismissing Action, D. Nev., June 26, 2019) (dismissing as moot Valdez-Jimenez's parallel federal writ proceeding challenging his pretrial bail proceedings after he pleaded guilty and was incarcerated on his judgment of conviction).

The law makes an exception to mootness for disputes that are capable of repetition yet evading review. But, to guard against the judicial exercise of generally applicable executive and legislative power, the capable-of-repetition mootness exception has strict limits. It applies *"only if* (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there is a reasonable expectation that *the same complaining party* will be subjected to *the same action* again." *Sanchez-Gomez*, ___ U.S. at ___, 138 S. Ct. at 1540 (emphasis added)



(internal quotation omitted). The test is conjunctive—both standards must be met—and these petitions do not satisfy either.

In-custody defendants in Nevada have, as recently as last year, litigated pretrial-bail-proceeding challenges to appellate conclusion before release or incarceration mooted the bail dispute. *See Cameron v. Eighth Judicial Dist. Court*, 135 Nev. 214, 445 P.3d 843 (2019) (mandating that the district court reconsider and explain its decision, following an indictment return, to increase bail beyond the amount the justice court had set on the original criminal complaint); *In re Application of Wheeler*, 81 Nev. 495, 500, 406 P.2d 713, 716 (1965) (holding that the district court did not abuse its discretion in denying the defendant's release on bail in a murder case). The challenged action thus is not "in its duration too short to be fully litigated prior to its cessation or expiration." *Sanchez-Gomez*, ___ U.S. at ___, 138 S. Ct. at 1540. And, for Valdez-Jimenez and Frye to face the same action again, they would have to serve their prison sentences, be released, reoffend, and again be arrested, jailed, and subjected to the same bail procedures they challenge. For policy reasons, courts do not presume future criminal conduct in applying the capable-of-repetition mootness exception. *Compare Lane v. Williams*, 455 U.S. 624, 632-33 n.13 (1982) (concluding that case was moot where the challenged parole revocation could not "affect a subsequent parole determination unless respondents again violate state law, are returned to prison, and become eligible for parole"), *with Sanchez-Gomez*, ___ U.S. at ___, 138 S. Ct. at 1541 (in analyzing mootness, courts "assume[ ] that [litigants] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct") (second alteration in original) (internal quotation omitted). *See Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998) (holding that

SUPREME COURT
OF
NEVADA

(O) 1947A

"[t]he capable-of-repetition doctrine applies only in exceptional situations" such that petitioner's challenge to his parole revocation was moot and nonjusticiable) (internal quotation omitted).

Quoting *Bisch v. Las Vegas Metropolitan Police Department*, 129 Nev. 328, 334-35, 302 P.3d 1108, 1113 (2013), the majority offers a stripped-down statement of the capable-of-repetition mootness exception. It suggests that, to overcome mootness, it is enough "that (1) the duration of the challenged action is *relatively short*, (2) there is a *likelihood* that a *similar issue* will arise in the future, and (3) the matter is *important*." Majority op., *supra*, at 6 (emphasis added) (internal quotation omitted). As precedent, *Bisch* is questionable for two reasons. First, *Bisch* does not acknowledge much less explain its departure from the federal caselaw on the capable-of-repetition exception, which this court has endorsed and followed for years. *See, e.g., Stephens Media, LLC v. Eighth Judicial Dist. Court*, 125 Nev. 849, 858, 221 P.3d 1240, 1247 (2009) (applying the United States Supreme Court's capable-of-repetition mootness exception to resolve a Nevada case) (citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546-47 (1976)); *Langston v. State, Dep't of Motor Vehicles*, 110 Nev. 342, 344, 871 P.2d 362, 363 (1994) (same) (citing *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498 (1911), and *DeFunis v. Odegaard*, 416 U.S. 312 (1974)). Second, *Bisch*'s reformulation of the capable-of-repetition mootness exception is dictum—although Bisch's employer had removed her disciplinary write-up from her file by the time she appealed, the discipline carried collateral consequences so "an actual controversy still exist[ed]" for us to decide. *Bisch*, 129 Nev. at 335, 302 P.3d at 1113.

More fundamentally, the *Bisch* version of the capable-of-repetition exception does not provide adequate separation-of-powers

SUPREME COURT
OF
NEVADA

(O) 1947A

4

guardrails—especially since the judiciary is applying the standard to itself, with no other checks or balances. Relying on the interests of nonparties to save a case from mootness exponentially expands what is meant to be a very narrow exception. Nonparties with similar interests exist outside almost every case this court decides. Yet, the "judicial power exists *only* to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added). Replacing the requirement that "the same [complained of] action" be likely to repeat, *Sanchez-Gomez*, ___ U.S. at ___, 138 S. Ct. at 1540 (emphasis added), with a mere "*likelihood* that a *similar issue* will arise in the future," *Bisch*, 129 Nev. 334-35, 302 P.3d at 1113, invites judicial review of questions that did not and cannot affect the parties to the original dispute, which the separation of powers doctrine forbids. *Compare Degraw v. Eighth Judicial Dist. Court*, 134 Nev. 330, 334, 419 P.3d 136, 140 (2018) (denying as moot an extraordinary writ petition where "interpreting the statute in the requested manner when it is unclear whether this issue is likely to reoccur in the future would render any opinion advisory at best"), *with Personhood*, 126 Nev. at 602, 245 P.3d at 574 ("This court's duty is not to render advisory opinions but, rather, to resolve actual controversies by an enforceable judgment.").

To be clear: I agree with my colleagues as to the importance of prompt and constitutionally conducted pretrial detention and release decisions. But Valdez-Jimenez's and Frye's bail proceedings took place in Clark County's justice and district courts in 2018. In January of 2019, Clark County established its Initial Appearance Court, which revamped the County's pretrial custody and bail determination procedures, reportedly resulting in defendants appearing and having their custody and bail status

SUPREME COURT
OF
NEVADA

(O) 1947A

5

reviewed in a matter of hours. *See* Clark County, Nevada, News Releases, *In the Face of Increased Bookings, Inmates Move through Streamlined Judicial System Faster* (Feb. 24, 2020). And effective July 1, 2019, the Nevada Legislature created an interim committee to examine and recommend legislation relating to the pretrial release of defendants in criminal cases to the 2021 Nevada Legislature. Senate Concurrent Resolution No. 11, 80th Leg. (Nev. 2019).[1] These measures, combined with the changes wrought by the judicial and executive branches in the face of the COVID-19 pandemic, mean that, to the extent the record in this case frames the issues the court addresses,[2] those issues do not exist in the same form today.

Cases seeking extraordinary writ relief are fully subject to mootness and justiciability constraints. *Sanchez-Gomez*, ___ U.S. at ___,

---

[1]Senate Concurrent Resolution No. 11 directs the interim committee to examine and recommend changes to existing statutes concerning, among other matters, "[t]he timeliness and conduct of hearings to consider the pretrial release of defendants," "[t]he circumstances under which defendants should be released on their own recognizance," and "[t]he imposition of monetary bail as a condition of pretrial release and the considerations relating to the setting of the amount of any monetary bail."

[2]Valdez-Jimenez and Frye did not include the record of their bail proceedings in justice court in the appendices to their writ petitions, so we cannot say precisely how Clark County's establishment of its Initial Appearance Court in 2019 would affect what they experienced in 2018. While the indictment returns in district court started new criminal cases, that did not render irrelevant the bail proceedings had in justice court on Valdez-Jimenez's and Frye's initial charges. *Cf. Cameron*, 135 Nev. at 215, 445 P.3d at 844 (holding that the district court properly considered justice court bail proceedings in setting bail post-indictment-return and abused its discretion in later increasing the bail amount without explaining its departure from the amount the justice court originally set).

138 S. Ct. at 1540; *Mesagate Homeowners' Ass'n v. City of Fernley*, 124 Nev. 1092, 1097, 194 P.3d 1248, 1251 (2008). With an incomplete record, parties whom our judgment cannot affect, and the changes that have occurred and are occurring in Nevada's bail procedures since the petitioners' 2018 bail proceedings, I would deny their petitions as moot. To do otherwise raises serious "concern about the proper—and properly limited—role of the courts in a democratic society." *Warth*, 422 U.S. at 498.

_____, C.J.
Pickering